## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

---

Willis Electric Co., Ltd.,

                Plaintiff,

    v.

Polygroup Macau Limited (BVI), Polytree
(H.K) Co. Ltd., and Polygroup Trading
Limited,

                Defendants.

Case No. 15-cv-3443 (WMW/KMM)

**ORDER GRANTING IN PART AND
DENYING IN PART DEFENDANTS'
MOTION TO DISMISS**

---

Before the Court is Defendants' motion to dismiss Counts VII through XVI of

Plaintiff's second amended complaint, which allege that Defendants violated federal and

state law by engaging in anticompetitive conduct. (Dkt. 331.) For the reasons addressed

below, Defendants' motion is granted as to Plaintiff's unfair-competition claim, (Count X),

and denied in all other respects.

## BACKGROUND

Plaintiff Willis Electric Co., Ltd. (Willis Electric) and Defendants Polygroup Macau

Limited (BVI), Polytree (H.K) Co. Ltd., and Polygroup Trading Limited (collectively,

Polygroup) are competitors in the field of artificial holiday trees. Manufacturers in this

field compete based on price, product quality, and product innovation. Willis Electric

began manufacturing holiday lights in 1993 and expanded its business to include pre-lit

artificial holiday trees in 2008. Until 2010, Willis Electric's pre-lit holiday trees were

"typical of the industry," as they were "big, bulky, complex, and difficult to assemble."

But in 2010, Willis Electric began selling a "One Plug Tree that was unlike anything the holiday tree market had ever seen before." Willis Electric filed a patent application pertaining to the One Plug Tree. Polygroup subsequently began selling a "knockoff design" and applied for its own patent.

Willis Electric commenced this patent-infringement lawsuit in 2015, alleging that Polygroup has infringed and continues to infringe six of Willis Electric's United States patents pertaining to lighted artificial holiday trees. In November 2016, the magistrate judge granted the parties' stipulation to stay this case pending *inter partes* review (IPR) before the Patent Trial and Appeal Board (PTAB). The magistrate judge lifted that stay in March 2019, and Willis Electric filed a second amended complaint approximately two months later. In the second amended complaint, Willis Electric continues to allege six counts of patent infringement while advancing ten additional counts alleging that Polygroup engaged in anticompetitive conduct.

The ten new counts include three counts of alleged antitrust conduct, in violation of the Sherman Act, 15 U.S.C. §§ 1, 2, and Minnesota's antitrust statute, Minn. Stat. §§ 325D.51, .52 (Counts VII, VIII, and IX). The new counts also include a related claim for common-law conspiracy based on the same alleged antitrust conduct (Count XVI). These antitrust counts in the second amended complaint are based in part on alleged bid-rigging agreements between Polygroup and another distributor pursuant to which "Polygroup would secretly manufacture its . . . trees for [the other distributor], and in exchange, neither party would compete with the other party's tree slot" with respect to multiple retailers. The antitrust counts also are based in part on Polygroup's alleged

"predatory pricing" and below-cost bidding that were intended to prevent Willis Electric from expanding its business to new retailers.

The ten new counts also allege unfair competition, in violation of Minn. Stat. § 325D.44 (Count X); false advertising, in violation of the Lanham Act, 15 U.S.C. § 1125(a) (Count XI); violation of Minnesota's Uniform Deceptive Trade Practices Act, Minn. Stat. §§ 325D.43 *et seq.* (Count XII); and common-law claims for tortious interference with prospective economic advantage (Count XIII), tortious product disparagement (Count XIV), and defamation (Count XV). These counts are based on Polygroup's alleged false and misleading statements to customers about the validity of Willis Electric's patents and the functionality of Willis Electric's products.

Polygroup moves to dismiss the ten new counts in the second amended complaint that pertain to alleged anticompetitive conduct. As to these ten counts, Polygroup argues that this Court lacks personal jurisdiction over Polygroup, venue in this District is improper, and Willis Electric fails to state a claim on which relief can be granted. Polygroup also argues that Counts X through XV are time barred.

## ANALYSIS

### I.      Personal Jurisdiction and Venue

Polygroup argues that, because it has no connection with Minnesota, Counts VII through XVI of Willis Electric's second amended complaint must be dismissed for lack of personal jurisdiction and improper venue. *See* Fed. R. Civ. P. 12(b)(2), 12(b)(3). Because Polygroup moves to dismiss for lack of personal jurisdiction, Willis Electric must make a prima facie showing that personal jurisdiction exists. *K-V Pharm. Co. v. J. Uriach & CIA,*

*S.A.*, 648 F.3d 588, 591–92 (8th Cir. 2011).  To do so, Willis Electric must plead sufficient facts to support a reasonable inference that Polygroup can be subjected to jurisdiction within Minnesota, the forum state.  *Id.*  The evidentiary showing required at the prima facie stage is minimal, *Johnson v. Arden*, 614 F.3d 785, 794 (8th Cir. 2010), but a plaintiff's prima facie showing is "tested, not by the pleadings alone, but [also] by the affidavits and exhibits" supporting and opposing the motion to dismiss, *Dever v. Hentzen Coatings, Inc.*, 380 F.3d 1070, 1072 (8th Cir. 2004) (internal quotation marks omitted).  When determining whether personal jurisdiction exists, a district court views the evidence in the light most favorable to the plaintiff, resolving all factual conflicts in the plaintiff's favor.  *K-V Pharm.*, 648 F.3d at 592.

Willis Electric argues that personal jurisdiction and venue are established as to its antitrust claims (Counts VII through IX and Count XVI) pursuant to the Clayton Act, 15 U.S.C. § 22.  Willis Electric also contends that personal jurisdiction and venue are established, pursuant to pendant personal jurisdiction, as to its claims for unfair competition, false advertising, deceptive trade practices, and common-law business torts (Counts X through XV).  The Court addresses each argument in turn.

### A.    Personal Jurisdiction and Venue Under the Clayton Act

According to Willis Electric, personal jurisdiction and proper venue in this Court are established as to the antitrust claims (Counts VII, VIII, IX, and XVI) pursuant to the Clayton Act.  Special venue and service-of-process rules apply to private antitrust lawsuits brought against corporate defendants under the Clayton Act:

> Any suit, action, or proceeding under the antitrust laws against a corporation may be brought not only in the judicial district whereof it is an inhabitant, but also in any district wherein it may be found or transacts business; and all process in such cases may be served in the district of which it is an inhabitant, or wherever it may be found.

15 U.S.C. § 22. When Congress has provided for worldwide service of process, as it has done in the Clayton Act, "due process requires only that [a defendant] have sufficient minimum contacts with the United States as a whole to support personal jurisdiction." *KM Enters., Inc. v. Global Traffic Techs., Inc.*, 725 F.3d 718, 730–31 (7th Cir. 2013); *accord In re Fed. Fountain, Inc.*, 165 F.3d 600, 601–02 (8th Cir. 1999) (holding that, when a federal statute permits nationwide service of process, Congress has "exercised its authority to furnish federal district courts with the power to exert personal jurisdiction nationwide"). As Polygroup concedes, the Clayton Act provides for personal jurisdiction over a corporate defendant so long as venue is established under 15 U.S.C. § 22. *See KM Enters.*, 725 F.3d at 730–31; *Daniel v. Am. Bd. of Emergency Med.*, 428 F.3d 408, 422–27 (2d Cir. 2005); *accord Fed. Fountain*, 165 F.3d at 601–02.

Under the Clayton Act, venue over a corporate defendant is proper "in any district wherein it . . . transacts business." 15 U.S.C. § 22.[1] "[A] corporation is engaged in transacting business in a district if in fact, in the ordinary and usual sense, it transacts business therein of any substantial character." *United States v. Scophony Corp. of Am.*,

---

[1] Polygroup suggests that the Clayton Act is inapplicable because Willis Electric did not cite this statute in its second amended complaint. But Polygroup provides no legal authority to support this contention. To the contrary, when considering a motion to dismiss for lack of personal jurisdiction or improper venue, a district court is not confined to allegations in the complaint. *See Dever*, 380 F.3d at 1072; *Minn. Supply Co. v. Mitsubishi Caterpillar Forklift Am. Inc.*, 822 F. Supp. 2d 896, 914 n.26 (D. Minn. 2011).

333 U.S. 795, 807 (1948) (internal quotation marks omitted).  The purpose of the "transacts business" language in the Clayton Act is to make the "practical, everyday business or commercial concept of doing or carrying on business 'of any substantial character' [ ] the test of venue." *Camps v. Ticketmaster Corp.*, 140 F.3d 1166, 1173 (8th Cir. 1998) (quoting *Scophony*, 333 U.S. at 807).  For example, "[a] defendant manufacturer that promotes its goods in a judicial district through product demonstrations, that solicits orders through its [workforce] in that district, and that ships its goods into that district clearly 'transacts business' under [the Clayton Act]." *Daniel*, 428 F.3d at 429 (citing *Eastman Kodak Co. of N.Y. v. S. Photo Materials Co.*, 273 U.S. 359, 374–77 (1927)).

Here, the second amended complaint alleges that Polygroup conducts business in Minnesota "by offering to sell, selling, importing, and/or distributing lighted artificial trees."  More specifically, Willis Electric alleges that Polygroup sells its products at retail stores in Minnesota, including Target, Walmart, Lowe's, Home Depot, and Costco.  And Willis Electric has submitted exhibits demonstrating that Polygroup has worked with a Minnesota advertising firm and directed its representatives to attend trade shows in Minnesota to promote its products.  These allegations and exhibits demonstrate that Polygroup transacts business in Minnesota, as is necessary to establish proper venue and personal jurisdiction under the Clayton Act.

For these reasons, Polygroup's motion to dismiss Willis Electric's antitrust claims for lack of personal jurisdiction and improper venue is denied.

## B.     Pendent Personal Jurisdiction

According to Willis Electric, this Court may exercise pendent personal jurisdiction over Polygroup as to Willis Electric's remaining state and federal claims for unfair competition, false advertising, deceptive trade practices, and common-law business torts (Counts X through XV).

When a lawsuit includes non-patent claims that go "hand-in-hand" with the patent-infringement claims, such as state-law defamation and unfair-competition claims, Federal Circuit law applies to jurisdictional issues involving the non-patent claims. *Amana Refrigeration, Inc. v. Quadlux, Inc.*, 172 F.3d 852, 856-57 (Fed. Cir. 1999). Under Federal Circuit law, a district court may exercise "pendent personal jurisdiction" over a plaintiff's "non-patent claims to the extent they form part of the 'same case or controversy' as the patent claims." *Avocent Huntsville Corp. v. Aten Int'l Co.*, 552 F.3d 1324, 1339 (Fed. Cir. 2008) (quoting 28 U.S.C. § 1367(a)). To form part of the same case or controversy as the patent claims, the non-patent claims "must arise out of a common nucleus of operative fact." *Silent Drive, Inc. v. Strong Indus., Inc.*, 326 F.3d 1194, 1206 (Fed. Cir. 2003) (internal quotation marks omitted).

Willis Electric's state and federal claims for unfair competition, false advertising, deceptive trade practices, and common-law business torts are based on alleged false and misleading statements made by Polygroup to customers. These alleged statements pertain to the validity of Willis Electric's patents and the functionality of Willis Electric's patented products. For example, Willis Electric alleges that Polygroup told market participants that its products are better than Willis Electric's products because they can "be connected

electrically and mechanically in any direction or 360 degrees: a feature designed and patented by Willis Electric, not Polygroup." And Willis Electric alleges that Polygroup "told at least one major retailer that its patents in this area invalidated Willis Electric's patents" and that the retailer "could buy from Polygroup instead, because Willis Electric's patents are invalid." Because these allegations relate to Polygroup's manufacture and distribution of allegedly infringing products, the allegations arise out of the same "nucleus of operative fact" as Willis Electric's patent-infringement claims. As such, this Court has pendant personal jurisdiction over Polygroup as to Willis Electric's state and federal claims for unfair competition, false advertising, deceptive trade practices, and common-law business torts (Counts X through XV).

Polygroup also moves to dismiss these counts based on improper venue. It is Polygroup's burden to establish that venue is improper. *Safco Prods. Co. v. WelCom Prods., Inc.*, 730 F. Supp. 2d 959, 963 (D. Minn. 2010). Polygroup has not done so here. "If there is no district in which an action may otherwise be brought," venue is proper in "any judicial district in which any defendant is subject to the court's personal jurisdiction." 28 U.S.C. § 1391(b)(3). Polygroup has not identified an alternative forum in which venue would be proper.[2] As such, venue in this Court is proper under Section 1391(b)(3) because, as addressed above, Polygroup is subject to this Court's personal jurisdiction.

---

[2] Even if Polygroup could identify an alternative federal forum in which venue is proper, a district court lacks the power to dismiss claims on this basis and must instead transfer those claims to the alternative forum. *See Bacon v. Liberty Mut. Ins. Co.*, 575 F.3d 781, 783-84 (8th Cir. 2009) (citing 28 U.S.C. § 1404(a)).

For these reasons, Polygroup's motion to dismiss Willis Electric's state and federal claims for unfair competition, false advertising, deceptive trade practices, and common-law business torts for lack of personal jurisdiction and improper venue is denied.

## II.     Statute of Limitations

Polygroup also argues that Willis Electric's state and federal claims for unfair competition, false advertising, deceptive trade practices, and common-law business torts, (Counts X through XV), are time-barred.  According to Polygroup, because each of these claims is based on allegedly defamatory statements that Polygroup made in 2013 and 2014, Minnesota's two-year statute of limitations for defamation claims applies.

Whether a claim is time-barred by an applicable statute of limitations "is typically an affirmative defense, which the defendant must plead and prove." *Jessie v. Potter*, 516 F.3d 709, 713 n.2 (8th Cir. 2008) (citing *John R. Sand & Gravel Co. v. United States*, 552 U.S. 130 (2008) and Fed. R. Civ. P. 8(c)).  Because an affirmative defense must be pleaded *and proved*, a "defendant does not render a complaint defective by pleading an affirmative defense." *Id.* (citing *Gomez v. Toledo*, 446 U.S. 635, 640 (1980)).  Rather, dismissal for failure to state a claim based on an affirmative defense is appropriate only when the defense is established on the face of the complaint.  *Id.*; *accord Story v. Foote*, 782 F.3d 968, 975 (8th Cir. 2015) (Bye, J., concurring in part and dissenting in part).  This means that "the district court is limited to the materials properly before it on a motion to dismiss, which may include public records and materials embraced by the complaint." *Noble Sys. Corp. v. Alorica Cent., LLC*, 543 F.3d 978, 983 (8th Cir. 2008).  The Court addresses each statute-of-limitations argument in turn.

## A. Willis Electric's Statutory State-Law Claims (Counts X and XII)

Willis Electric advances two statutory claims under Minnesota law: unfair competition, in violation of Minn. Stat. § 325D.44 (Count X), and violation of Minnesota's Uniform Deceptive Trade Practices Act (DTPA), Minn. Stat. §§ 325D.43 *et seq.* (Count XII). Under Minnesota law, a six-year statute of limitations applies to any claim based on "liability created by statute." Minn. Stat. § 541.05 subd. 1(2). Because Willis Electric's unfair competition and DTPA claims are based on statutory liability, Minnesota's six-year limitations period applies. *See, e.g.*, *Parkhill v. Minn. Mut. Life Ins. Co.*, 174 F. Supp. 2d 951, 956 (D. Minn. 2000) (applying six-year statute of limitations to DTPA claim), *aff'd*, 286 F.3d 1051 (8th Cir. 2002); *LensCrafters, Inc. v. Vision World, Inc.*, 943 F. Supp. 1481, 1491 n.6 (D. Minn. 1996) (observing that six-year statute of limitations applies to unfair-competition claims brought under Minn. Stat. § 325D.44).

Polygroup argues that, because these statutory claims are predicated on allegedly defamatory conduct, this Court should instead apply the two-year limitations period applicable to defamation claims under Minnesota law. But Polygroup identifies no legal authority for doing so. Minnesota's six-year statute of limitations plainly applies to claims based on "liability created by statute" and contains no exception for statutory liability that is premised on arguably defamatory conduct. As such, Polygroup's argument lacks merit.

Because it is clear from the face of the complaint that Willis Electric's two statutory claims under Minnesota law, Count X and Count XII, are subject to a six-year limitations period, Polygroup's motion to dismiss these counts on this basis is denied.

## B. Willis Electric's Lanham Act Claim

Count XI of the second amended complaint alleges false advertising under the Lanham Act, which does not contain a statute of limitations. *See Axcan Scandipharm Inc. v. Ethex Corp.*, 585 F. Supp. 2d 1067, 1077 (D. Minn. 2007). When a federal statute does not contain a statute of limitations, federal courts "must select 'the most appropriate or analogous state statute of limitations.' " *Egerdahl v. Hibbing Cmty. Coll.*, 72 F.3d 615, 617 (8th Cir. 1995) (quoting *Goodman v. Lukens Steel Co.*, 482 U.S. 656, 660 (1987)).

Polygroup maintains that Willis Electric's false-advertising claim under the Lanham Act is most analogous to a defamation claim, which is subject to a two-year statute of limitations under Minnesota law. *See* Minn. Stat. § 541.07. Willis Electric counters that its Lanham Act claim is most analogous to either a claim based on statutory liability or a claim based on fraud, both of which are subject to a six-year statute of limitations under Minnesota law. *See* Minn. Stat. § 541.05, subd. 1(2), (6). Federal courts in this District consistently have applied a six-year statute of limitations to false-advertising claims under the Lanham Act. *See, e.g.*, *Axcan Scandipharm*, 585 F. Supp. 2d at 1077; *Multi-Tech Sys., Inc. v. Hayes Microcomputer Prods, Inc.*, 800 F. Supp. 825, 849 (D. Minn. 1992); *Fox Chem. Co. v. Amsoil, Inc.*, 445 F. Supp. 1355, 1359 (D. Minn. 1978) (applying Minnesota's six-year limitations period to Lanham Act claim because a false-advertising claim "essentially states a cause of action most closely related to fraud"). Polygroup has identified no legal authority, nor has the Court's research found any, that supports applying Minnesota's two-year statute of limitations to a false-advertising claim under the Lanham Act or otherwise analogizes such a claim to a defamation claim. As such, Polygroup's argument is unavailing.

Because it is clear from the face of the complaint that Willis Electric's false-advertising claim under the Lanham Act, (Count XI), is subject to a six-year limitations period, Polygroup's motion to dismiss that count on this basis is denied.

## C. Willis Electric's State-Law Tort Claims

Willis Electric also alleges common-law claims for tortious interference with prospective economic advantage (Count XIII), tortious product disparagement (Count XIV), and defamation (Count XV).

Under Minnesota law, defamation claims are subject to a two-year statute of limitations. Minn. Stat. § 541.07(1). This limitations period also applies to tortious interference with business relationships when the alleged interference was "by means of defamation." *Wild v. Rarig*, 234 N.W.2d 775, 793 (Minn. 1975); *accord Randy's Sanitation, Inc. v. Wright County*, 65 F. Supp. 2d 1017, 1031 (D. Minn. 1999). According to Polygroup, Willis Electric's state-law tort claims are time barred because each is based on allegedly defamatory conduct that occurred more than two years before Willis Electric filed its second amended complaint.

Willis Electric counters that its tortious-interference claim is based, at least in part, on fraudulent conduct rather than defamatory conduct. In addition, Willis Electric contends that the limitations period in this case has been tolled for several reasons—namely, because Polygroup's conduct is a "private libel" based on the limited extent of publication, Polygroup's conduct may amount to fraudulent concealment, this case was stayed for nearly two-and-a-half years, and the allegations in the second amended complaint relate back to the date of the original complaint. Because some or all of Willis

Electric's arguments rely on disputed or insufficiently developed facts, the statute-of-limitations issue pertaining to Willis Electric's state-law tort claims cannot be resolved on a motion to dismiss. *See Jessie*, 516 F.3d at 713 n.2 (observing that "the possible existence of a statute of limitations defense is not ordinarily a ground for Rule 12(b)(6) dismissal unless the complaint itself establishes the defense").

For these reasons, Polygroup's motion to dismiss these counts as time-barred is denied.

### III.     Defendants' Motion to Dismiss for Failure to State a Claim

Polygroup argues that Willis Electric fails to state a claim as to Counts VII through XVI of its second amended complaint. If a complaint fails to state a claim on which relief can be granted, dismissal is warranted. *See* Fed. R. Civ. P. 12(b)(6). When determining whether a complaint states a facially plausible claim, a district court accepts as true the factual allegations in the complaint and draws all reasonable inferences in the plaintiff's favor. *Blankenship v. USA Truck, Inc.*, 601 F.3d 852, 853 (8th Cir. 2010). Factual allegations must be sufficient to "raise a right to relief above the speculative level" and "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007). Legal conclusions couched as factual allegations may be disregarded. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court addresses each disputed count in turn.

### A.     Bid-Rigging Claim (Count VII)

Count VII of the second amended complaint alleges that Polygroup engaged in bid-rigging in violation of the Sherman Act, 15 U.S.C. § 1, and Minnesota's antitrust statute,

Minn. Stat. § 325D.51. To state a claim under either statute, a plaintiff must allege "(1) that there was a contract, combination, or conspiracy; (2) that the agreement unreasonably restrained trade under either a *per se* rule of illegality or a rule of reason analysis; and (3) that the restraint affected interstate commerce." *Insignia Sys., Inc. v. News Am. Mktg. In-Store, Inc.*, 661 F. Supp. 2d 1039, 1062 (D. Minn. 2009) (internal quotation marks omitted).

### 1. Antitrust Injury

Polygroup first argues that Willis Electric has not alleged an "antitrust injury." Although Polygroup frames this as a failure to state a claim, Polygroup appears to conflate the market-injury element of a substantive claim under the Sherman Act with the antitrust-injury requirement for statutory standing under the Sherman Act. *See TheMLSonline.com, Inc. v. Regional Multiple Listing Serv. of Minn., Inc.*, 840 F. Supp. 2d 1174, 1180 (D. Minn. 2012) (recognizing that these inquiries are distinct and collecting cases). Polygroup's "antitrust injury" arguments are limited to whether Willis Electric has sufficiently alleged injury to *itself*, as opposed to any arguments as to injury to the market. For this reason, the Court limits its analysis of this issue to an evaluation of statutory standing.

In contrast to Article III standing, which addresses "the constitutional power of a federal court to resolve a dispute," statutory standing pertains to whether "Congress . . . has accorded *this* injured plaintiff the right to sue the defendant to redress [the plaintiff's] injury." *Miller v. Redwood Toxicology Lab., Inc.*, 688 F.3d 928, 934 (8th Cir. 2012) (internal quotation marks omitted). A plaintiff's burden to establish standing depends on the stage of litigation. General factual allegations may be sufficient at the pleading stage because courts "presume[e] that general allegations embrace those specific facts that are

necessary to support the claim." *Wieland v. U.S. Dep't of Health & Human Servs.*, 793 F.3d 949, 954 (8th Cir. 2015) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)).

To determine whether a plaintiff has standing under the Sherman Act "requires an evaluation of the plaintiff's harm, the alleged wrongdoing by the defendant, and the relationship between them." *Gen. Indus. Corp. v. Hartz Mountain Corp.*, 810 F.2d 795, 809 (8th Cir. 1987). As such, a court must determine whether the plaintiff is "the target of the anticompetitive activity, not one who has merely suffered indirect, secondary, or remote injury." *Midwest Commc'ns v. Minn. Twins, Inc.*, 779 F.2d 444, 451 (8th Cir. 1985) (internal quotation marks omitted).

Here, the second amended complaint alleges that Polygroup and another distributor entered a bid-rigging scheme to gain an advantage over Polygroup's market competitors, including Willis Electric, with the intent to "beat down Willis Electric" in particular. According to Willis Electric, one purpose of Polygroup's anticompetitive agreement "was to remove Willis from the Lowe's market and prevent Willis from entering the market at other large home goods and home improvement retailers." As a result of this coordinated anticompetitive conduct, Willis Electric alleges, Polygroup harmed Willis Electric's sales, business reputation, and market share, and "successfully leveraged [Polygroup's] anti-competitive agreements with other manufacturers to prevent Willis Electric from entering, or from making inroads that it otherwise would have, at retailers." In light of the low burden to establish standing at the pleading stage, *see Wieland*, 793 F.3d at 954, these

allegations sufficiently demonstrate that Polygroup caused an antitrust injury and that Willis Electric was a target of the anticompetitive activity.

As such, Willis Electric has alleged an "antitrust injury" sufficient to establish statutory standing under the Sherman Act.

### 2. Relevant Market and Horizontal Restraint on Trade

Polygroup next argues that Willis Electric fails to define the relevant market or allege a "horizontal" restraint on trade. Willis Electric counters that it has defined the market with sufficient precision to allege a horizontal restraint on trade that is *per se* unlawful.

"Horizontal restraints of trade result when combinations of traders at one level of the market structure agree to exclude direct competitors from the same level of the market." *Double D Spotting Serv., Inc. v. Supervalu, Inc.*, 136 F.3d 554, 558 (8th Cir. 1998) (citing *United States v. Topco Assocs.*, 405 U.S. 596, 608 (1972)). "Restraints that are *per se* unlawful include horizontal agreements among competitors to fix prices or to divide markets." *Leegin Creative Leather Prods., Inc. v. PSKS, Inc.*, 551 U.S. 877, 886 (2007) (internal citation omitted); *see also United States v. Misle Bus & Equip. Co.*, 967 F.2d 1227, 1235 (8th Cir. 1992) (recognizing that a bid-rigging agreement among competitors is a *per se* violation of the Sherman Act). When a plaintiff adequately pleads a *per se* violation of the Sherman Act, the plaintiff need not plead a relevant market with any greater precision. *See Double D*, 136 F.3d at 558, 560. Moreover, often the "proper market definition can be determined only after a factual inquiry into the commercial realities faced

by consumers," which first requires the parties to have an opportunity for discovery. *Id.* at 560 (internal quotation marks omitted).

Here, Willis Electric alleges that bid-rigging agreements existed between Polygroup and another distributor pursuant to which "Polygroup would secretly manufacture its . . . trees for [the other distributor], and in exchange, neither party would compete with the other party's tree slot" with respect to multiple retailers. These allegations in the second amended complaint define the market and its participants with sufficient precision to state a plausible claim for horizontal bid-rigging between competitors at the same level of the artificial holiday tree market, which is a *per se* violation of the Sherman Act. Polygroup has not established that any additional detail is required at the pleading stage. And resolution of any factual dispute by Polygroup as to whether the alleged bid-rigging agreement is *vertical* as opposed to *horizontal* would be improper on a motion to dismiss. Accordingly, dismissal is not warranted on this basis.

### 3. Bid-Rigging Conduct

Polygroup also contends that Willis Electric has not alleged any bid-rigging conduct because there is no allegation that Polygroup *controlled* the bid process. Bid rigging is an "agreement between competitors pursuant to which contract offers are to be submitted or withheld from a third party." *United States v. Mobile Materials, Inc.*, 881 F.2d 866, 869 (10th Cir. 1989) (quoting *Untied States v. Portsmouth Paving Co.*, 694 F.2d 312, 325 (4th Cir. 1982)). Polygroup cites neither binding nor persuasive legal authority for the proposition that a plaintiff asserting a bid-rigging claim under the Sherman Act must allege

that the defendant directly *controlled* the bid process.  Nor has the Court's research located any.  Thus, dismissal is not warranted on this basis.

For all the foregoing reasons, Polygroup's motion to dismiss Willis Electric's bid-rigging claim, (Count VII), is denied.

### B.    Monopolization Claims (Counts VIII and IX)

Counts VIII and IX of the second amended complaint allege monopolization and attempted monopolization in violation of the Sherman Act, 15 U.S.C. § 2.  To plead a monopolization claim, a plaintiff must allege that defendants "(1) possessed monopoly power in the relevant market and (2) willfully acquired or maintained that power as opposed to gaining it as a result of a superior product, business acumen, or historical accident."  *Double D*, 136 F.3d at 560 (internal quotation marks omitted).  And to plead an *attempted* monopolization claim, a plaintiff must allege "(1) a specific intent by the defendant to control prices or destroy competition; (2) predatory or anticompetitive conduct undertaken by the defendant directed to accomplishing the unlawful purpose; and (3) a dangerous probability of success."  *Gen. Indus.*, 810 F.2d at 801.

Polygroup first argues that Willis Electric has not alleged a relevant market.  The second amended complaint refers to "the market for artificial holiday trees at large home goods and home improvement retailers in the United States," including "the market for artificial holiday trees at Lowe's and Home Depot."  Polygroup contends that there is no plausible reason that artificial trees sold at Lowe's and Home Depot should be considered a "discrete antitrust market."  But the fact that Willis Electric uses two specific retail stores as examples does not suggest that the alleged relevant market is limited to those two stores.

On a motion to dismiss, this Court accepts the factual allegations in the complaint as true and draws *all reasonable inferences* in the plaintiff's favor. *Blankenship*, 601 F.3d at 853. These two specific examples of retail stores, together with all of Willis Electric's allegations, support the reasonable inference that the alleged relevant market is not limited to Lowe's and Home Depot.

Polygroup also challenges Willis Electric's broader definition of "the market for artificial holiday trees at large home goods and home improvement retailers," and disputes the exclusion of small retailers and non-artificial holiday trees from this market definition. A relevant market includes both a product market and a geographic market. *Bathke v. Casey's Gen. Stores, Inc.*, 64 F.3d 340, 345 (8th Cir. 1995). "The relevant product market includes all reasonably interchangeable products. The geographic market is defined by considering the commercial realities faced by consumers. It includes the geographic area in which consumers can practically seek alternative sources of the product . . . ." *Double D*, 136 F.3d at 560 (internal citations omitted). Polygroup contends that the relevant market alleged by Willis Electric is too narrow and should include small retailers and non-artificial holiday trees. But the allegations in the second amended complaint demonstrate that artificial trees have innovative and unique characteristics that would not necessarily render them interchangeable with non-artificial holiday trees. Moreover, as addressed above, often the "proper market definition can be determined only after a factual inquiry into the commercial realities faced by consumers," which first requires the parties to have an opportunity for discovery. *Double D*, 136 F.3d at 560 (internal quotation marks omitted). Accordingly, Polygroup's arguments for dismissal on this basis are unavailing.

Polygroup next argues that some of Willis Electric's allegations contradict the assertion that Polygroup holds "monopoly power." A plaintiff may demonstrate monopoly power "by showing a high market share within a defined market." *Insignia Sys.*, 661 F. Supp. 2d at 1057 (internal quotation marks omitted). And "[a]n eighty percent market share is within the permissible range from which an inference of monopoly power can be drawn." *Morgenstern v. Wilson*, 29 F.3d 1291, 1296 n.3 (8th Cir. 1994). The second amended complaint alleges that Polygroup's approximate market share is 75 to 80 percent in the market for artificial holiday trees at large home goods and home improvement retailers in the United States. The fact that Willis Electric also alleges that the artificial holiday tree business is "extremely competitive" and that its products have been successful does not warrant ignoring Willis Electric's allegations that Polygroup maintains a monopolistic market share, which the Court accepts as true on a motion to dismiss. Moreover, Polygroup relies exclusively on case law involving summary judgment, which applies a legal standard of *proof* and is, therefore, inapposite at the pleading stage.

Polygroup also contends that Willis Electric's allegations of "predatory pricing" are implausible. In particular, Polygroup contends that Willis Electric has not alleged that Polygroup's prices are below cost or that there is a dangerous probability that Polygroup will recoup its lost profits. The second amended complaint alleges that Polygroup provided a below-cost bid on a product that "it could not afford to make . . . at the prices it offered," with the intent to undercut Willis Electric, and that Polygroup "would have to outsource the manufacturing to another company" if it were to accidentally win the bid. Based on this example, Willis Electric alleges that Polygroup has "made other bids at below cost or

at predatory prices in order to prevent Willis from making inroads at other retailers," and that "Polygroup will be able to recoup its investment in predatory pricing because its bid-rigging and marketplace allocation agreements with . . . other sellers allow [Polygroup] to spread the cost of its predatory pricing more widely." Moreover, Willis Electric alleges that, although it "bids at cost to build market share," it nonetheless has lost bids to Polygroup, which suggests that Polygroup is bidding below cost. These allegations, and the reasonable inferences that may be drawn from these allegations, adequately plead that Polygroup has engaged in predatory pricing. *See Inline Packaging, LLC v. Graphic Packaging Int'l, Inc.*, 164 F. Supp. 3d 1117, 1129 (D. Minn. 2016) (denying motion to dismiss monopolization claims because the allegations in the complaint led to "the logical inference that [defendant] is selling below its cost").

For these reasons, Polygroup's motion to dismiss Willis Electric's monopolization claims, (Counts VIII and IX), is denied.

## C. Civil-Conspiracy Claim (Count XVI)

Count XVI of the second amended complaint alleges that Polygroup engaged in a civil conspiracy. Rather than providing an independent basis for this claim to be dismissed, Polygroup instead argues that Willis Electric cannot allege a civil conspiracy if its underlying antitrust claims are dismissed. Because the Court denies Polygroup's motion to dismiss Willis Electric's antitrust claims for the reasons addressed above, Polygroup's motion to dismiss Willis Electric's civil-conspiracy claim, (Count XVI), also is denied.

## D. Unfair-Competition Claim (Count X)

Count X of the second amended complaint alleges that Polygroup engaged in unfair competition in violation of Minnesota law.

"Under Minnesota law, unfair competition is not a tort with specific elements, . . . rather, it describes a general category of torts which courts recognize for the protection of commercial interests." *Goddard, Inc. v. Henry's Foods, Inc.*, 291 F. Supp. 2d 1021, 1034 (D. Minn. 2003) (internal quotation marks omitted). Disparagement of a product or business is a tort that may serve as the basis for an unfair-competition claim. *See Imperial Developers, Inc. v. Seaboard Sur. Co.*, 518 N.W.2d 623, 627 (Minn. Ct. App. 1994). But if the underlying tort is duplicative of another claim, "the claim for unfair competition must be dismissed." *Goddard, Inc.*, 291 F. Supp. 2d at 1034 (citing *Zimmerman Grp., Inc. v. Fairmont Foods of Minn. Inc.*, 882 F. Supp. 892, 895 (D. Minn. 1994)). Willis Electric alleges that Polygroup disparaged Willis Electric's patents and products. But Willis Electric's disparagement allegations are duplicative of its allegations in support of its other claims, including its false-advertising claim. For this reason, Willis Electric's unfair-competition claim must be dismissed.

Accordingly, Polygroup's motion to dismiss Willis Electric's unfair-competition claim, (Count X), is granted.

### E.      False-Advertising and DTPA Claims (Counts XI and XII)

Counts XI and XII of the second amended complaint allege that Polygroup engaged in false advertising, in violation of the Lanham Act, 15 U.S.C. § 1125(a), and the DTPA, Minn. Stat. §§ 325D.43 *et seq.* To state a false-advertising claim under the Lanham Act, Willis Electric must allege that (1) in a commercial advertisement, Polygroup made a false

statement of fact about a product; (2) the statement actually deceived or has the tendency to deceive a substantial segment of the statement's audience; (3) the deception is material, meaning it is likely to influence purchasing decisions; (4) Polygroup caused the false statement to enter interstate commerce; and (5) Willis Electric was injured as a result of the false statement. *Buetow v. A.L.S. Enters., Inc.*, 650 F.3d 1178, 1182 (8th Cir. 2011). A false-advertising claim under the DTPA is evaluated using the same analysis as a false-advertising claim under the Lanham Act. *See Grp. Health Plan, Inc. v. Philip Morris, Inc.*, 68 F. Supp. 2d 1064, 1069 (D. Minn. 1999).

Polygroup first contends that Willis Electric has not plausibly alleged a false statement of fact. "Under the Lanham Act, a plaintiff can prove that advertising is false by showing either that it contains a statement that is literally false, or a statement that, while literally true, implicitly conveys a false message, is misleading, or is likely to deceive consumers." *Buetow*, 650 F.3d at 1185. Willis Electric alleges that Polygroup made false and misleading statements to customers about the validity of Willis Electric's patents and the functionality of Willis Electric's products. In particular, the second amended complaint alleges that Polygroup "told at least one major retailer that its patents in this area invalidated Willis Electric's patents," which is "impossible, because Willis Electric's [patents] predate Polygroup's [patents]." Willis Electric also alleges that, although its patented design "always has had 360-degree movement," Polygroup falsely or misleadingly told a manufacturer that Willis Electric's product "is not 360 degrees," and told a retailer that Polygroup's design has 360-degree movement in contrast to Willis

Electric's "original design" that did not have 360-degree movement.[3]  Polygroup's

contention that no plausible false statement of fact has been alleged is unavailing.[4]

Polygroup also argues that the alleged statements were not made in commercial

advertisements that were sufficiently disseminated, so as to state a claim on which relief

can be granted.  "A statement is made in a commercial advertisement if the representations

are commercial speech, made by a commercial competitor, for the purpose of influencing

consumers to buy that competitor's goods."  *My Pillow, Inc. v. LMP Worldwide, Inc.*, 331

F. Supp. 3d 920, 934 (D. Minn. 2018).  "Such a statement also must be disseminated

sufficiently to the relevant purchasing public to constitute advertising or promotion within

that industry."  *Id.* (internal quotation marks omitted).  "The level of circulation required

to constitute advertising and promotion will vary from industry to industry and from case

to case."  *Med. Graphics Corp. v. SensorMedics Corp.*, 872 F. Supp. 643, 650 (D. Minn.

---

[3]  According to Polygroup, the Court should disregard these allegations because they are contradicted by admissions Willis Electric made during IPR proceedings before the PTAB.  A "district court may take judicial notice of public records and may thus consider them on a motion to dismiss."  *Stahl v. U.S. Dep't of Agric.*, 327 F.3d 697, 700 (8th Cir. 2003).  But even if this Court takes judicial notice of statements Willis Electric made in the IPR proceedings, Polygroup's arguments for dismissal nonetheless fail.  Polygroup emphasizes Willis Electric's statement in the IPR proceedings that "in 2012 [Willis Electric] had difficulty sourcing reliable components . . . so 7 SKUs were sold with a one-direction connector."  These facts do not contradict the allegations in the second amended complaint because they do not pertain to the relevant time period of Polygroup's alleged false statements, which occurred in 2013.  Moreover, the fact that *some* of Willis Electric's products were sold in 2012 with a one-directional connector is not inconsistent with Willis Electric's allegation that Polygroup's broad statement to customers—that, in 2013, "[Willis Electric's] system is not 360 degrees"—was literally false or at least misleading.

[4]  Polygroup also argues that Willis Electric's claim for product disparagement, (Count XIV), should be dismissed on this basis.  But for the reasons addressed above, this argument is unavailing.

1994).  In the second amended complaint, Willis Electric alleges that Polygroup made false or misleading statements on at least five separate occasions to at least one manufacturer and three retailers.  Significantly, Willis Electric does not sell to the public directly, and its market generally is confined to a limited group of retailers.  At the pleading stage, Willis Electric's allegations as to dissemination are sufficient to survive dismissal.

For these reasons, Polygroup's motion to dismiss Willis Electric's false-advertising and DTPA claims. (Counts XI and XII), is denied.

### F.    State-Law Tort Claims (Counts XIII and XV)

The second amended complaint also alleges common-law claims for tortious interference with prospective economic advantage, (Count XIII), and defamation, (Count XV).  Polygroup contends that Willis Electric fails to plausibly allege that Willis Electric had a reasonable expectation of economic advantage to support Count XIII and fails to plausibly allege harm to Willis Electric's reputation to support Count XV.

### 1.    Tortious Interference with Prospective Economic Advantage

Under Minnesota law, the elements of tortious interference with prospective economic advantage are: (1) the existence of a reasonable expectation of an economic advantage, (2) the defendant's knowledge of that expectation, (3) intentional interference with that expectation by the defendant that is either independently tortious or in violation of state or federal law, (4) a reasonable probability that the plaintiff would have realized this economic advantage absent the defendant's wrongful actions, and (5) the plaintiff was damaged.  *Gieseke ex rel. Diversified Water Diversion, Inc. v. IDCA, Inc.*, 844 N.W.2d

210, 219 (Minn. 2013). Polygroup only challenges the sufficiency of Willis Electric's allegations as to the first element.

To prove a claim of tortious interference with prospective economic advantage, "a plaintiff must specifically identify a third party with whom the plaintiff had a reasonable probability of a future economic relationship." *Id.* at 221. Without more, "a plaintiff's projection of future business with *unidentified* customers . . . is insufficient as a matter of law." *Id.* at 221-22 (emphasis added). Willis Electric alleges that it lost bids that it had expected to win from several specific current or prospective customers, including Walmart, Home Depot, Meijer, and Lowe's. Polygroup contends that artificial tree manufacturers "have no guarantee of success." But Polygroup provides no legal authority, nor is the Court aware of any, requiring a plaintiff to prove—let alone *plead*—a guaranteed expectation of success.

For these reasons, Polygroup's motion to dismiss Willis Electric's claim for tortious interference with prospective economic advantage, (Count XIII), is denied.

## 2. Defamation

Under Minnesota law, the elements of a defamation claim are that the defendant (1) made a false and defamatory statement about the plaintiff, (2) published that statement to a third party, and (3) harmed the plaintiff's reputation in the community. *Maethner v. Someplace Safe, Inc.*, 929 N.W.2d 868, 873 (Minn. 2019). Polygroup challenges the sufficiency of Willis Electric's allegations only with respect to the third element.

To be defamatory, a statement "must *tend* to harm the plaintiff's reputation." *McKee v. Laurion*, 825 N.W.2d 725, 731 (Minn. 2013) (internal quotation marks omitted)

(emphasis added). If the statement is "*capable* of conveying a defamatory meaning, it is for the jury to decide whether [the statement was] in fact so understood." *Id.* at 732 (emphasis added). As described in greater detail above, Willis Electric alleges that Polygroup made false or misleading statements about its patents, technology, and products to the public in a manner and context that harms Willis Electric's commercial reputation. Polygroup responds that the allegedly defamatory statements are not actionable because they are subjective or assertions of quality.

In support of its argument, Polygroup relies on *Bernstein v. Extendicare Health Servs., Inc.*, in which the district court explained that "subjective statements of superiority" and "[g]eneral assertions of quality" are "puffery" that cannot support fraud claims under Minnesota's consumer protection laws. 607 F. Supp. 2d 1027, 1031 (D. Minn. 2009). To be sure, "[o]nly statements that present or imply the existence of fact that can be proven true or false are actionable under state defamation law." *Schlieman v. Gannett Minn. Broad., Inc.*, 637 N.W.2d 297, 308 (Minn. Ct. App. 2001). Nonetheless, Polygroup's argument is misplaced. The allegations in the second amended complaint involve statements about the validity of Willis Electric's patents and the functionality of its products. Statements as to whether a patent is valid, or whether a product includes a certain feature, are not subjective statements of opinion or general assertions of quality. To the contrary, they are statements of fact that can be proven true or false. Moreover, to the extent that Polygroup contends that these statements would not harm Willis Electric's reputation in the "sophisticated buying community," such a dispute cannot be resolved on

a motion to dismiss. *See McKee*, 825 N.W.2d at 732 (explaining that it is for a jury to decide whether a false statement conveyed a defamatory meaning).

Accordingly, Polygroup's motion to dismiss Willis Electric's defamation claim, (Count XV), is denied.

## ORDER

Based on the foregoing analysis and all the files, records and proceedings herein, **IT IS HEREBY ORDERED** that Defendants' motion to dismiss is **GRANTED** as to Count X of the second amended complaint and **DENIED** in all other respects.


Dated:  February 3, 2020                                    s/Wilhelmina M. Wright
                                                            Wilhelmina M. Wright
                                                            United States District Judge