# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

---

| | |
|---|---|
| Willis Electric Co., Ltd., | Case No. 15-cv-3443 (JNE/DTS) |
| Plaintiff, | |
| v. | **AMENDED ORDER** |
| Polygroup Limited et al, | |
| Defendants. | |

---

This matter is before the Court on the motions in limine filed by Plaintiff Willis Electric Co., Ltd. ("Willis Electric") and Defendants Polygroup Limited (Macao Commercial Offshore), Polygroup Macau Limited (BVI), Polytree (H.K.) Co. Ltd., Polygroup Trading Limited (collectively, "Defendants" or "Polygroup"). (Dkts. 802, 807, 816, 829, 828, 849, 854, 857, 861, 864.) For the reasons addressed below, the Court grants in part and denies in part the motions.

## BACKGROUND

Willis Electric brings this case pursuant to 35 U.S.C. § 271 et seq., alleging that Polygroup infringed four patents related to artificial trees owned by Willis Electric. Polygroup denies infringement and contends that Willis Electric's patents are invalid. The parties now move for an order excluding certain evidence at trial.

## ANALYSIS

### I.   Plaintiff's Motions in Limine

Willis Electric filed several motions in limine seeking to preclude or limit certain evidence and arguments by Polygroup.  Specifically, Willis Electric moved to preclude Polygroup from: (1) presenting evidence or arguments related to unasserted patent claims, withdrawn patents, or withdrawn causes of action; (2) presenting evidence or arguments on advice of counsel while maintaining privilege, or presenting executive testimony on beliefs about infringement or validity; (3) introducing 2020 and later sales data not produced in discovery; (4) presenting inequitable conduct or duty of candor evidence or arguments; and (5) referencing the parties' prior litigation history.  The Court addresses each motion in turn.

## A.    Unasserted Claims, Withdrawn Patents, and Causes Not at Issue

Willis Electric moves to exclude any evidence or argument related to unasserted claims, arguing such evidence is irrelevant under Fed. R. Evid. 402 and any marginal relevance is outweighed by the danger of unfair prejudice, confusion of the issues, and wasting time under Fed. R. Evid. 403.  *Glaros v. H.H. Robertson Co.*, 797 F.2d 1564 (Fed. Cir. 1986); *Bombardier Recreational Prods., Inc. v. Arctic Cat, Inc.*, No. 12-2706, 2017 WL 5256741 (D. Minn. Nov. 11, 2017).  Willis Electric contends each claim must be evaluated independently, differences in burden of proof and claim construction between PTAB proceedings and district court would require counter-evidence, and the case has already been substantially narrowed.

Polygroup opposes the motion as overbroad, arguing evidence related to the eight underlying independent claims is highly relevant to the obviousness analysis for the still-asserted dependent claims.  35 U.S.C. § 112(d); *Electro-Mech. Corp. v. Power Distrib.*

*Prods.*, No. 1:11CV00071, 2013 WL 1859229 (W.D. Va. Mar. 13, 2013). Polygroup cites authority that the validity status of independent claims can simplify the obviousness analysis for dependent claims, especially as to secondary considerations of non-obviousness. *Princeton Digit. Image Corp. v. Konami Digit. Entm't Inc.*, No. CV 12-1461-LPS-CJB, 2015 WL 219019 (D. Del. Jan. 14, 2015). It distinguishes the cases cited by Willis Electric. Polygroup also argues excluding this evidence would confuse the jury and cause unfair prejudice, citing *Adams v. Fuqua Indus., Inc.*, 820 F.2d 271, 273 (8th Cir. 1987) and Fed. R. Evid. 403.

Polygroup argues Willis Electric's motion is overbroad in seeking to exclude all evidence and arguments related to unasserted claims. Polygroup agrees certain unasserted claim evidence should be excluded, such as details of the inter partes review proceedings and causes of action previously dismissed. However, Polygroup contends the eight underlying independent claims are highly relevant as the still-asserted dependent claims incorporate their limitations by reference. 35 U.S.C. § 112(d); *Electro-Mech. Corp.*, 2013 WL 1859229, at *2.

Polygroup emphasizes dependent claims necessarily incorporate all limitations from the independent claims under 35 U.S.C. § 112(d). Thus, excluding any reference to the independent claims would preclude presenting the full scope of limitations for the dependent asserted claims.

Additionally, Polygroup argues the invalidity status of the independent claims is directly relevant to evaluating the obviousness of the dependent asserted claims. *Princeton Digit. Image*, 2015 WL 219019, at *3; *Ceiva Logic Inc. v. Frame Media Inc.*, No. SACV

3

08-00636-JVS (RNBx), 2009 WL 10673158, at *8.  In particular, Polygroup contends the point of novelty for any secondary considerations evidence must arise from the additional limitations in the dependent claims, not the now-invalid independent claims.  *Ormco Corp. v. Align Tech., Inc.*, 463 F.3d 1299, 1311-13 (Fed. Cir. 2006).

Polygroup goes on to argue the cases cited by Willis Electric are distinguishable and inapposite to this situation involving asserted dependent claims with underlying invalid independent claims.  *Cordis Corp. v. Medtronic, Inc.*, 511 F.3d 1157, 1183-84 (Fed. Cir. 2008); *Bombardier Rec. Prod.*, 2017 WL 5256741, at *3.  Polygroup notes *Cordis* involved claims with "differing language and scope," while here the claims substantially overlap.  It also distinguishes the *Bombardier* unasserted claims as not involving underlying independent claims, and differentiates the other cited cases factually.

Polygroup further argues excluding evidence about the invalidity status of the underlying independent claims would confuse the jury and unfairly prejudice Polygroup. *Adams*, 820 F.2d at 273; Fed. R. Evid. 403.  Because the asserted claims incorporate limitations from the independent claims, failing to reference the independent claims would itself prove confusing.  Additionally, without the context that the independent claims are invalid, Polygroup contends it would be hampered in its ability to argue the dependent claims' point of novelty must arise from the additional limitations in those claims.

Polygroup notes that while the different standards between the inter partes review and district court may not be relevant, the mere status of the independent claims as invalid and freely available to practice remains pertinent to the obviousness evaluation.  *Cuozzo Speed Techs., LLC v. Lee*, 579 U.S. 261, 278 (2016).

In light of these arguments regarding relevance to the obviousness analysis and potential jury confusion, Polygroup urges the Court to deny Willis Electric's motion in limine and allow reference to the underlying independent claims and their invalidity at trial.

While the Court recognizes merit to the arguments on both sides, it agrees with Polygroup that excluding all evidence related to the eight underlying independent claims would impose an undue straightjacket on the invalidity arguments at trial. Given the asserted claims' dependency on the independent claims for their limitations, and the relevance of the independent claims' status to evaluating secondary considerations, some reference is permissible.

However, the Court also acknowledges Willis Electric's concerns about jury confusion given the differing standards between PTAB proceedings and district court litigation. Details of the specific analyses would risk diverting the issues into an unnecessary foray into administrative law. As such, a middle ground is appropriate to allow relevance while minimizing these Rule 403 risks.

Accordingly, the parties may reference the existence of the underlying independent claims and may note their ultimate determination to be invalid and freely available to practice. However, the parties should refrain from in-depth discussion of the details in the Patent Office proceedings themselves. The focus should remain on how this status impacts the obviousness arguments, not relitigating the minutiae of the IPR decisions.

Additionally, to avoid confusing timelines, the parties should take care to note these underlying claims were invalidated after the filing of the present lawsuit.

With these limitations, Polygroup may reference the bare status of the underlying independent claims without reference to burdens of proof or standards unique to IPR proceedings.  Discussion should center on how their present invalidity impacts the asserted dependent claims.  This balances the relevance against potential jury confusion and waste of time under Rule 403.

Willis Electric's motion is therefore granted in part as to prevention of detailed IPR evidence and denied in part as to exclusion of any reference to the invalid underlying independent claims.

### B.  Advice of Counsel Privilege and Testimony on Beliefs

Polygroup clearly states in its opposition brief that it "has not sought to, and does not intend to, rely on advice of counsel at trial."  Polygroup explains that the inclusion of one privileged email in its exhibits was inadvertent and it provided Willis Electric with a corrected exhibit.  Because Polygroup will not offer evidence about reliance on advice of counsel, it argues that issues regarding waiver of privilege or using privilege as a sword and shield are irrelevant.

Willis Electric argues in its motion in limine that under the "fundamental fairness consideration underlying the sword-shield rule," the Court should preclude Polygroup from offering evidence or argument that it obtained legal advice about Willis Electric's patents before this lawsuit while Polygroup withholds communications with counsel on that subject.  Willis Electric relies on authority like *Advanced Cardiovascular Sys., Inc. v. Medtronic, Inc.*, 265 F.3d 1294, 1309 (Fed. Cir. 2001) to contend Polygroup cannot use attorney-client privilege as both a sword and a shield.

Polygroup argues that under the Supreme Court's 2016 decision in *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 579 U.S. 93, 105, the question of willful infringement now depends entirely on the infringer's subjective beliefs.  Polygroup cites the *Halo* case to contend that its understanding of whether its products infringe a valid patent is highly relevant to willful infringement.

Polygroup points to factual exhibits and deposition testimony showing that years before Willis Electric's patents, Polygroup independently investigated patent landscape developments and made efforts to avoid infringement.  Polygroup argues these efforts occurred wholly separate from any privileged communications.

Relying on *Omega Patents, LLC v. CalAmp Corp.*, 920 F.3d 1337, 1352 (Fed. Cir. 2019), Polygroup contends its lay witnesses can testify about the company's subjective beliefs and results of its "independent investigations."  Polygroup argues Omega Patents confirms this testimony would be about Polygroup's state of mind rather than improper expert testimony.

Willis Electric cites Lewis Cheng's deposition testimony to argue Polygroup's non-infringement "opinion" is intertwined with and dominated by privileged communications with counsel.  Willis Electric contends Polygroup cannot separate non-attorney discussions from attorney advice received.

Willis Electric also argues testimony from Polygroup's non-attorneys would be irrelevant under Fed. R. Evid. 402 and 403 because they lack qualifications on patent law or technology.  Willis Electric contends cases like *SSL Servs., LLC v. Citrix Sys., Inc.*, 769 F.3d 1073, 1092 (Fed. Cir. 2014) confirm this testimony has little probative value.

7

After reviewing the parties' briefing and considering the arguments presented, the Court finds that Polygroup has the more compelling position regarding the admissibility of evidence concerning its subjective beliefs and state of mind.

As Polygroup correctly notes, the Supreme Court's decision in *Halo* emphasizes that the question of willful infringement turns on the subjective beliefs and knowledge of the accused infringer.  See *Halo Elecs.*, 579 U.S. at 105.  Consequently, evidence speaking to Polygroup's subjective understanding and analysis of infringement and validity issues is highly probative.

Additionally, Polygroup cites to Federal Circuit precedent in Omega Patents affirming that accused infringers may introduce testimony from key business personnel regarding their "independent investigation" and conclusions about the scope of asserted patent rights.  See *Omega Pats.*, 920 F.3d at 1352.  Polygroup has come forward with exhibits and deposition citations confirming it performed such independent inquiries into the patent landscape.

Finally, Polygroup plainly states it does not intend to rely on advice of counsel evidence that could give rise to privilege waiver or sword-and-shield concerns.  This averment substantially blunts a key basis for Willis Electric's motion.

In light of the controlling authority and facts regarding Polygroup's apparent independent development and analysis efforts, the Court finds that the evidence bears directly on Polygroup's state of mind and willful infringement allegations.  Accordingly, the potential prejudice to Willis Electric does not warrant wholesale exclusion under Rule 403.  Willis Electric's objections may be reasserted at trial as necessary.

### C.     Late Sales Data Not Produced

A key dispute raised in Willis Electric's motion in limine is whether Polygroup's disclosure of previously unseen sales data for unaccused products was improperly late and should be excluded.  Polygroup argues the disclosure was timely and justified, while Willis Electric claims it was unfairly surprising and prejudicial.  The evidence presented supports Polygroup's position when the specific timeline and scope of the data requests are considered.

Regarding whether Polygroup refused to provide the sales data during discovery, the record does not support Willis Electric's contention.  Willis Electric bases this claim on an email exchange towards the end of discovery discussing supplementation of Interrogatory Number 1.  However, Polygroup shows that Willis Electric's original interrogatory and the discussed supplementation were explicitly limited to financial information on accused products.  The communications do not show a request encompassing data on unaccused trees.  Polygroup cannot have refused a request that was never made.  The Court agrees with Polygroup that Willis Electric fails to demonstrate Polygroup denied discovery of information it knew Willis Electric sought.

For similar reasons, the unaccused product sales data also appears to fall outside the scope of Willis Electric's discovery demands based on the record.  As Polygroup notes, Interrogatory Number 1 sought details on accused trees only.  Willis Electric's supplementation request reiterated this limitation.  The undisclosed sales figures thus do not seem to be within the information Willis Electric asked Polygroup to provide originally

or as a supplement.  With no request encompassing the now-challenged sales numbers, their omission earlier was justified.

Additionally, Polygroup contends the 2020 sales information did not exist until after discovery closed in December 2020, as commonsense would dictate.  Willis Electric does not dispute or rebut this factual point.  The Court finds no evidence showing Polygroup could have produced data before it was available.  This provides further justification for the data first appearing with Polygroup's 2022 rebuttal expert report.

Polygroup argues that even if the unaccused sales data is considered responsive to Willis Electric's discovery requests, its disclosure was substantially justified as rebuttal to the expert opinion of Willis Electric's damages expert, Michele Riley.  Ms. Riley opined that Polygroup's redesigned products were not an acceptable non-infringing alternative to consumers.  Polygroup's expert, Ms. Davis, requested the sales data during expert discovery in order to directly rebut this opinion and show market acceptance of the alternative design.  Polygroup asserts it produced the data at Ms. Davis's request in conjunction with her rebuttal report, as permitted by Rule 26(e).

Willis Electric does not directly address whether the sales data was properly produced as rebuttal evidence.  The Court concludes Polygroup presents a reasonable explanation for why the data was requested and produced with Ms. Davis's report - to rebut opinions that Willis Electric itself introduced through its expert.  Using rebuttal expert evidence to challenge affirmative opinions is justified and commonplace.  Polygroup's production of data to support its rebuttal opinions appears substantially justified, even if technically late in the overall litigation.

Furthermore, Polygroup notes that Willis Electric waited 18 months after receiving the disputed sales data before filing this motion in limine.  This significant delay undercuts Willis Electric's claims of prejudice from the late disclosure.  Polygroup argues that any surprise or prejudice that may have existed has "evaporated" over this time.  The Court again agrees with Polygroup on this point.  If Willis Electric required additional discovery to address the late-produced sales figures, it had ample time to raise that issue or seek a continuance.  Instead Willis Electric remained silent until the eve of trial.  This dilatory conduct suggests a lack of actual prejudice.  The late disclosure therefore appears harmless as well as substantially justified.

For these reasons, Polygroup's rebuttal expert reliance on previously-undisclosed sales data for unaccused products, while technically falling outside the discovery period, was reasonably explained and responsive to opinions presented by Willis Electric itself. Any delay or surprise was mitigated by the passage of time before Willis Electric raised objections.  Exclusion of the evidence under FRCP 37(c) would therefore be an unduly harsh result.  Willis Electric's motion is accordingly denied and Polygroup permitted to introduce the sales data regarding non-infringing alternatives.  This will allow for a full presentation of the disputed issues and evidence before the jury.

### D.    Inequitable Conduct Evidence

Polygroup acknowledges that "questions of inequitable conduct will not be tried in January 2024 and, therefore, they do not intend to offer evidence, testimony, or argument regarding inequitable conduct or violations of the duty of candor as to the prosecution of the asserted patents during trial."  Thus, the issue of inequitable conduct itself is moot.

Willis Electric seeks a broad order excluding any "evidence, argument, or implication about inequitable conduct, the duty of candor to the Patent Office, or suggesting any impropriety by Willis Electric or its attorneys or agents before the Patent Office." However, Polygroup cites case law stating that undisclosed prior art can "carry more weight" in proving invalidity because it reflects information the PTO lacked. *Microsoft Corp. v. i4i Ltd. P'ship*, 564 U.S. 91, 110-11 (2011). A blanket prohibition could preclude Polygroup from making arguments concerning prior art references GKI Tree and Wesley Pine, which are probative of validity but were not disclosed. Thus, a wholesale exclusion would sweep too broadly here given the posture of the case.

An order limiting the exclusion solely to evidence offered to prove inequitable conduct directly would appropriately balance plaintiff's concerns about prejudice with defendant's interests in presenting its defenses. See *BioMerieux, S.A. v. Hologic, Inc.*, No. 18-21-LPS, 2020 WL 583917, at *1 (D. Del. Feb. 6, 2020) (allowing undisclosed prior art so long as no reference to duties of disclosure). This permits evidence to be considered on the merits while avoiding tangents into improper conduct.

Polygroup seeks to introduce evidence concerning the scope of prior art before the alleged invention date to help establish obviousness, separate and apart from any suggestion that Willis Electric violated disclosure duties. Polygroup has a legitimate interest in demonstrating the level of skill and knowledge in the art at the time through such evidence. So long as there is no accompanying allegation regarding candor or misconduct in prosecution, allowing reference to this art for validity defenses is permissible and Willis

Electric's concerns of prejudice can be alleviated through an instruction to the jury on limited use.

Polygroup also argues it should be permitted under Rule 608(b) to cross-examine Willis Electric's patent prosecution attorney John Fonder on prior allegations he violated the duty of candor to probe his general character for truthfulness.  Willis Electric has indicated it intends to call Fonder to testify at trial.  Cross-examination relating to credibility has some probative value and should not be categorically prohibited, so long as the questioning focuses only on truthfulness and not on assertions of inequitable conduct itself.  However, specific objections may be warranted depending on the form of questions posed.  Ruling on those is better reserved for trial.

So for the foregoing reasons, while a blanket exclusion order would be improper given the issues presented at this stage, limitations crafted to allow relevant evidence only for purposes other than proving misconduct, paired with an instruction against any implications or arguments on that topic, appropriately balances the parties' respective positions.

Based on the foregoing discussion, an order precluding any evidence or reference concerning undisclosed prior art or the duty of candor would be overbroad given Polygroup's stated intent not to pursue an inequitable conduct defense at trial.  As Polygroup notes, there is probative value to certain evidence concerning Willis Electric's alleged inventor's awareness of undisclosed prior art references for purposes of assessing the scope of the prior art and obviousness arguments.  A blanket exclusion could impair Polygroup's ability to present its defenses.

At the same time, it remains improper for Polygroup to introduce evidence aiming only to establish misconduct before the Patent Office when that issue is not being asserted. Willis Electric is justified in seeking to avoid such tangents. Hence, while a total bar goes too far, evidence offered solely on inequitable conduct itself will still be prohibited.

The appropriate balance is to permit reference to prior art not disclosed during prosecution, but only for other legitimate ends such as demonstrating the state of the art for obviousness arguments and not as a means of alleging improper conduct. This allows Polygroup to introduce helpful evidence while preventing straying into inflammatory implications against Willis Electric's candor before the Patent Office. Appropriate jury instructions can reinforce this delineation.

Similarly, cross-examination related to general witness truthfulness may be permissible if focused squarely on credibility. However, the door to allegations of misconduct should remain closed absent further developments. Individual objections to specific questions posed at trial can help police that line and exclude any improper implications.

Willis Electric's motion is granted in part and denied in part. Specifically, Polygroup may not introduce evidence aimed solely at establishing inequitable conduct. Allegations of misconduct before the Patent Office are not at issue in this case and evidence offered solely for that improper purpose will be excluded.

However, Polygroup may introduce undisclosed prior art references, such as the GKI Tree or Wesley Pine, for purposes of demonstrating obviousness or other invalidity defenses. Using such references to show the state of the art at the time of the alleged

invention, without accompanying allegations regarding failure to disclose, will be permitted. This balances Willis Electric's valid concerns about prejudice with Polygroup's interests in supporting its defenses.

Finally, this ruling is made without prejudice to any objections Willis Electric may make to specific questions posed on cross-examination relating to general witness credibility and truthfulness. Some probing may be proper but depending on the framing and implications further restrictions may be warranted. Ruling on individual questions will be reserved for trial.

In summary, Polygroup may not introduce evidence solely aimed at inequitable conduct, but may reference undisclosed prior art for its defenses. Rulings on the permissible scope of witness credibility cross-examination will be made during trial.

### E.    Prior Litigation History

Willis Electric moves to exclude under Federal Rules of Evidence 402, 403 and 404(b) any evidence or references to prior litigation between the parties unrelated to the present dispute. Willis Electric argues that the multiple prior lawsuits spanning several years and courts, including patent infringement claims and consent judgments, have no relevance to the instant claims regarding willful infringement, damages, and invalidity defenses. Willis Electric further contends that any minimal relevance would be substantially outweighed by the dangers of unfair prejudice, jury confusion and wasted time on collateral "mini-trials" under Rule 403 regarding the prior disputes. Finally, it argues use of the lawsuits would constitute improper character evidence under Rule 404(b).

In opposition, Polygroup contends that the motion should be denied as moot and premature since it does not currently intend to present evidence on the prior lawsuits. However, Polygroup argues that if Willis Electric opens the door by presenting evidence or testimony that Polygroup copies other companies' products, it should be permitted to reference the prior lawsuits to rebut such evidence. It further asserts that Rule 403 should not act as a bar if the evidence becomes relevant.

Polygroup opposes the motion in limine as both premature and overbroad. It does not presently intend to introduce evidence regarding the prior lawsuits. However, Polygroup argues that if Willis Electric opens the door by eliciting testimony or evidence claiming that Polygroup copies other companies' products while Willis Electric respects intellectual property rights, the prior lawsuits may become relevant to contradict such claims. In that event, Polygroup asserts Rules 403 and 404(b) should not preclude admission. Polygroup cites cases holding that a party may open the door to otherwise irrelevant evidence and disputes that mini-trials regarding prior lawsuits are inherently prejudicial. See *Slidell, Inc. v. Millennium Inorganic Chemicals, Inc.*, No. 02-213, 2005 WL 6009982, at *1 (D. Minn. Jan. 7, 2005); *Transclean Corp. v. Bridgewood Servs.*, 101 F. Supp. 2d 788, 792 (D. Minn. 2000). It further argues any ruling under Rule 404(b) is premature absent the context of particular objections.

Willis Electric's motion is granted. The Court concludes that the series of prior lawsuits spanning several years and courts between these parties regarding different claims and patents are irrelevant under Rule 402 and would lead to confusion of the issues, wasted time, and unfair prejudice that substantially outweighs any probative value under Rule 403.

See *Cosmos Granite (W.), LLC v. Minagrex Corp.*, No. 19-cv-1697, 2021 WL 5140226, at *2 (W.D. Wash. Nov. 4, 2021); *CellTrust Corp. v. Ionlake*, LLC, No. 19-cv-2855, 2023 WL 3052733, at *4-6 (D. Minn. Apr. 23, 2023).  While parties may open the door to otherwise irrelevant evidence in some circumstances, the Court finds the dangers presented here are too significant.

Accordingly, Polygroup is precluded from presenting any evidence or argument regarding the prior lawsuits, even if Willis Electric references intellectual property issues, under Federal Rules of Evidence 402, 403 and 404(b).  This order does not preclude Polygroup from objecting to specific testimony presented by Willis Electric at trial.

## II.     Defendants' Motions in Limine

Polygroup filed several motions in limine seeking to limit or exclude certain evidence and arguments by Willis Electric.  Specifically, Polygroup seeks to preclude Willis Electric from: (1) introducing evidence, testimony, or arguments related to the Board's prior analysis of secondary considerations; (2) presenting evidence, testimony or arguments about the IPR proceedings themselves; (3) having Fonder offer improper opinion or legal testimony; (4) entering Hal Poret's survey, online comments, and related opinions offered in the IPR, on relevance, hearsay, and disclosure grounds; and (5) offering late-disclosed testimony, witnesses, and other evidence that Polygroup argues violates FRCP 26 and causes prejudice.  The Court addresses each motion in turn.

### A.     Board Analysis on Secondary Considerations

Polygroup seeks to preclude any evidence, testimony, or argument relating to the PTAB's findings regarding secondary considerations of non-obviousness based on their

contention that collateral estoppel does not apply.  Specifically, Polygroup makes several arguments against giving the PTAB decisions preclusive effect on the issue of secondary considerations.

First, Polygroup points out that the PTAB's initial 2018 findings crediting Willis Electric's evidence on secondary considerations were made in connection with independent claims that were subsequently vacated and remanded by the Federal Circuit in 2019.  *Polygroup Ltd. MCO v. Willis Elec. Co., Ltd*, 759 F. App'x 934, 943 (Fed. Cir. 2019).  Because those claims were vacated, Polygroup argues the associated findings on secondary considerations cannot have collateral estoppel effect.

Additionally, Polygroup contends that the PTAB's findings on secondary considerations were not "essential" to the judgment with respect to the asserted claims that ultimately survived the IPRs.  See also *B&B Hardware, Inc. v. Hargis Indus.*, 569 F.3d 383, 388 (8th Cir. 2009) (to have preclusive effect, determination must be "essential to the prior judgment").  In particular, Polygroup notes that on remand in 2020, the PTAB upheld the surviving claims based on deficiencies in the asserted prior art rather than considerations of secondary evidence indicia of non-obviousness.  *Polygroup Ltd. MCO v.Willis Elec. Co., Ltd.*, No. IPR2016-01610, 2020 WL 5985472, at *9 (P.T.A.B. Oct. 8, 2020).

Finally, Polygroup highlights that the specific grounds of invalidity asserted at the upcoming trial are different than those actually litigated before the PTAB during the IPR proceedings.  Polygroup argues this distinction defeats collateral estoppel because the

PTAB's findings were limited to the particular prior art combinations raised in the IPRs, which are not at issue in the present litigation.

In response, Willis Electric appropriately concedes it will not actively argue to the jury that collateral estoppel directly applies to prevent relitigation of the secondary considerations issues.  However, Willis Electric maintains that collateral estoppel principles should still apply issue preclusion to prevent Polygroup from disputing the PTAB's underlying factual findings that secondary indications of non-obviousness exist. Polygroup has understated the breadth of those findings, which Willis Electric showed were not as strictly limited to the precise IPR grounds as Polygroup portrays.  Thus, Polygroup should be estopped from disputing those findings, even if full collateral estoppel effect does not apply to completely prevent Polygroup from making other arguments against non-obviousness.

While Willis Electric will not ask the jury to decide collateral estoppel applicability, Willis Electric appropriately intends to preserve the issue for judgment as a matter of law motions and appeal, which is properly a question of law for the Court.  Because Willis Electric shows the PTAB's findings on secondary considerations have preclusive effect under issue preclusion principles, at minimum, Polygroup's motion to wholly exclude evidence related to the PTAB's analysis of secondary considerations is denied.

## B.    Evidence Regarding Separate IPR Proceedings

Polygroup first argues that the Board's findings on the surviving claims are irrelevant because different prior art is asserted for invalidity at trial.  Specifically, Polygroup contends that the IPR decisions finding certain claims not unpatentable have no

relevance since the prior art combinations presented to the PTAB differ from what Polygroup will assert at trial.

Additionally, Polygroup asserts that discussion of the IPR proceedings would risk confusing the issues, misleading the jury, and causing undue prejudice.  In support, Polygroup argues that admitting evidence about the IPR proceedings poses a danger of misleading the jury about the differing standards of proof applied in those proceedings versus at trial.  Polygroup posits this risk substantially outweighs any probative value under Fed. R. Evid. 403.

Lastly, Polygroup argues the Board's denial of institution on the '617 patent is likewise irrelevant and admission poses a risk of prejudice.  Specifically, Polygroup contends the decision to deny institution of an IPR regarding the '617 patent should be excluded as irrelevant.  Additionally, Polygroup asserts that allowing evidence on the denial risks confusing the issues and misleading the jury.

Contrary to Polygroup, Willis Electric first contends the IPR decisions are relevant to Polygroup's invalidity defense and Willis Electric's willfulness allegations.  Willis Electric argues the IPR decisions are highly relevant to weigh against Polygroup's obviousness defense, given Polygroup relied on similar prior art combinations that were rejected by the PTAB.  Additionally, Willis Electric asserts the decisions are relevant to willful infringement based on Polygroup's continued sales after the adverse IPR rulings regarding validity.

Next, Willis Electric argues any risk of confusion can be mitigated through limiting jury instructions.  Willis Electric maintains that courts routinely allow IPR evidence while

crafting jury instructions to address differences in claim construction standards and burdens of proof applied in the proceedings.  Willis Electric posits Polygroup's case law is inapposite or comprises outlier decisions.

Finally, Willis Electric contends the denial of institution is relevant evidence regarding willfulness.  Willis Electric argues denial of institution has been found relevant and admissible in other cases.  Willis Electric further asserts that any differences in legal standards can be addressed through a limiting instruction to the jury.

The Court first examines whether the IPR decisions are relevant to the invalidity and willfulness issues to be determined by the jury.  The Court agrees with Willis Electric that there is meaningful overlap with the prior art asserted in the IPR proceedings and what Polygroup relies on now for its invalidity defense.  Specifically, Polygroup continues to assert the GKI tree references and Otto patent in combination, which closely tracks what was considered and rejected by the PTAB.  This provides a legally meaningful basis for the jury to weigh against Polygroup's invalidity case.  See, e.g., *Microsoft Corp.*, 564 U.S. at 111; *Tokai Corp. v. Easton Enters., Inc.*, 632 F.3d 1358, 1367 (Fed. Cir. 2011).

Additionally, the Court finds the IPR history pertinent for the jury to assess the allegations of Polygroup's willful infringement.  Courts routinely allow IPR evidence as relevant for the willful infringement analysis.  See *Illumina, Inc. v. BGI Genomics Co., Ltd.*, No. 19-cv-03770, 2021 WL 4979799, at *9 (N.D. Cal. Oct. 27, 2021); *Contour IP Holding LLC v. GoPro, Inc.*, No. 17-cv-04738, 2021 WL 75666, at *8 (N.D. Cal. Jan. 8, 2021).  Here, Polygroup continued sales activity even after final written decisions rejecting

its invalidity grounds.  The jury should be permitted to weigh this as part of the totality of the circumstances in assessing willful infringement.

While the Court agrees there are different legal standards between the IPR proceedings and the present litigation, the Court believes it can craft an appropriate limiting instruction to mitigate any risk of confusion for the jury.  The instruction will explain the different burden of proof applied by the PTAB, as well as note that different prior art is asserted at present compared to the IPRs.  This is the consensus approach taken by district courts allowing IPR evidence while cautioning the jury on these key differences.  See *Illumina*, 2021 WL 4979799, at *9; *L.C. Eldridge Sales Co. v. Azen Mfg. Ltd.*, No. 6:11-cv-599, 2013 WL 7964028, at *3 (E.D. Tex. Nov. 14, 2013).

Finally, having found meaningful probative value and ability to address the prejudice concerns through a limiting instruction, the Court concludes that exclusion under Rule 403 is not warranted.  On balance, the risk of confusion or misleading the jury does not substantially outweigh the highly probative nature of the IPR evidence.  For these reasons, Polygroup's motion is denied.

## C.    Extraneous Legal Testimony by Witness

Willis Electric intends to call patent prosecutor John Fonder to testify regarding factual matters within his personal knowledge, not as a technical expert opining on infringement or validity.  Rule 701 of the Federal Rules of Evidence allows testimony to be admitted that is rationally based on the witness's perception, helpful to determining a fact in issue, and not based on specialized knowledge within the scope of Rule 702.  Fed. R. Evid. 701; see *United States v. Shah*, 84 F.4th 190, 236, 252 (5th Cir. 2023).  This allows

testimony by witnesses with personal knowledge of facts at issue in the case.  At the same time, Rule 701(c) prohibits lay witness testimony that is based on "scientific, technical, or other specialized knowledge within the scope of Rule 702."  Fed. R. Evid. 701(c).  If the witness has specialized knowledge and his testimony requires that knowledge, he must be qualified as an expert under Rule 702 and disclose opinions under Rule 26(a)(2)(C).  *Munchkin, Inc. v. Luv N' Care, Ltd.*, No. 2:13-cv-07228, 2015 WL 774046, at *1 (C.D. Cal. Feb. 24, 2015).

Additionally, it is established that witnesses generally cannot instruct the jury as to the applicable law or testify as to the governing legal standards.  See *Furnituredealer.net, Inc. v. Amazon.com, Inc.*, No. 18-232, 2022 WL 891462, at *8 (D. Minn. Mar. 25, 2022); *United States v. Palkowitsch*, No. 19-cr-0013, 2019 WL 5854059, at *2 (D. Minn. Nov. 8, 2019).   Furthermore, ultimate issues such as infringement and invalidity are factual questions for the jury to decide; witness testimony cannot impinge on those determinations.  See *Matthews v. Stolier*, No. 13-6638, 2015 WL 13544570, at *2 (E.D. La. Dec. 23, 2015).  Courts allow factual testimony from patent attorneys regarding prosecution history and related topics that are within their personal knowledge.  See, e.g., *Keystone Retaining Wall Sys. Inc. v. Rockwood Retaining Wall, Inc.*, No. 00-496, 2001 WL 36102284, at *10 (D. Minn. Oct. 9, 2001).

In contrast, Polygroup seeks to broadly exclude unspecified testimony from Fonder about "legal matters" and opinions, based chiefly on potential prejudice concerns without identifying particular objectionable testimony.  This vagueness works against Polygroup.  The testimony Willis Electric intends to elicit appears permissible under the standards

above, and Polygroup can make objections during trial if truly improper opinions or legal instructions are offered.  A sweeping limine exclusion is not justified on this record.

Based on the foregoing, Polygroup's motion in limine lacks sufficient justification at this stage to exclude testimony from patent prosecutor John Fonder.  Fonder should be allowed to testify to factual matters regarding the patents-in-suit that are within his personal knowledge, subject to appropriate objections at trial.  A broad exclusion of undefined "legal opinion" testimony would be premature and unfounded.

### D.    Hal Poret Opinions and Internet Evidence

During the pre-trial conference, counsel for Willis Electric stated that Hal Poret will not be testifying at trial due to serious health issues that preclude him from appearing. Given this representation that Poret is unavailable to provide live testimony, the Court will exclude any analysis or consideration of Poret's potential testimony from its pre-trial decisions and trial rulings.

Willis Electric disclosed Poret as an expert witness before the Court's deadline, producing his 68-page expert report from the IPR proceedings.  This report qualifies as a complete statement of Poret's opinions and basis for them as required by Rule 26.  Willis Electric also expressly identified Poret by name and included a pinpoint citation to his expert report in its June 11, 2019 response to Polygroup's Prior Art Statement.  Between disclosing the full report and expressly naming Poret as a witness who addressed secondary considerations of non-obviousness, Willis Electric complied with its obligations under Rule 26.

Additionally, the record undercuts any claim of unfair prejudice by Polygroup. Polygroup previously deposed Poret about the content of his expert report. Polygroup also submitted a rebuttal expert report criticizing Poret's survey methodology from Dr. Simonson. Allowing references to a report Polygroup long ago received and managed to rebut does not constitute an unfair surprise or prejudice. The Court rejects Polygroup's timeliness and prejudice arguments as contrary to the factual record.

While Polygroup seeks to exclude evidence of Poret's survey conducted for the IPR proceedings as irrelevant or hearsay, the Rules do not support a wholesale exclusion. Experts are expressly allowed under Rule 703 to rely upon and testify regarding otherwise inadmissible evidence, if reliance thereon accords with reasonable industry practice. Here, damages expert Michele Riley and Polygroup's own experts all relied upon and considered Poret's survey. Reliance by damages experts on consumer surveys performed by others has been permitted by courts over similar objections. See, e.g., *Fujifilm Corp. v. Motorola Mobility LLC*, No. 12-cv-03587-WHO, 2015 WL 1737951 (N.D. Cal. Apr. 8, 2015); *Banhazl v. Am. Ceramic Soc'y*, 602 F.Supp.3d 198 (D. Mass. 2021). As proper testimony under Rule 703, Poret's survey evidence should remain admissible.

Additionally, Poret's survey may properly be used as cross-examination material for Polygroup's experts. All assessed the survey in forming opinions. Such surveys may be presented to question the knowledge or biases of expert assumptions. See *Jensen v. EXC, Inc.*, 82 F.4th 835, 848 (9th Cir. 2023). Total exclusion goes too far given permissible expert reliance and cross-examination uses. The Court allows references to Poret's survey under Rules 703 and 607.

While Polygroup broadly seeks exclusion of anonymous consumer comments referenced in exhibits P683 and P693 as irrelevant or hearsay, applicable case law demonstrates consumer comments are not always excludable on such bases. Specifically, comments may demonstrate customer or public notice about features of a product, relevant to secondary considerations of non-obviousness assessments and market perspectives considered in hypothetical negotiation determinations. See *Guild v. Gen. Motors Corp.*, 53 F. Supp. 2d 363 (W.D.N.Y. 1999); *Auraria Student Hous. at the Regency, LLC v. Campus Vill. Apartments, LLC*, No. 10-cv-02516-WJM-KLM, 2014 WL 4651643, at *7 (D. Colo. Sept. 18, 2014). Here, the comments go to public notice regarding ease-of-assembly benefits in Willis Electric's One Plug trees.

Willis Electric also rightly argues assessment of the specific comments is premature at the in limine stage and would benefit from additional context at trial. Deferring any ruling on the comments until they are presented in context, subject to appropriate limiting instructions if necessary, ensures a properly informed decision can be made. Categorical exclusion without such context is inappropriate. The Court denies the motion as premature regarding the consumer comments in P683 and P693 while deferring any ultimate admissibility decision until trial.

### E.    Extra Materials with Approaching Trial Date

Polygroup moves to exclude certain late-disclosed testimony, witnesses, and evidence pursuant to the Court's inherent authority and Federal Rule of Civil Procedure 37. Polygroup and Willis Electric have litigated the asserted patents over eight years in this Court and parallel inter partes review (IPR) proceedings. The case was previously stayed

pending conclusion of the IPRs.  Third party witnesses Ada Luk, Beverly Rodgers, Brian Stone, and Winston Tan submitted declarations in the IPRs and were deposed by Polygroup. Willis Electric produced many of their IPR deposition transcripts and declarations in this litigation and identified reliance on these witnesses in written discovery responses.

At the pre-trial conference, Willis Electric represented that it no longer intends to designate deposition testimony from Stone and Tan as evidence.  As a result, the Court will not discuss Stone and Tan's depositions in its analysis.

Polygroup moves to exclude deposition transcripts from Luk and Rodgers's IPR proceedings produced by Willis Electric as affirmative deposition designations on November 14, 2023.  Polygroup argues the transcripts are inadmissible hearsay not within any exception.  See Fed. R. Evid. 802.  It contends it lacked similar motive or opportunity to examine the witnesses as it does in this infringement litigation, given more limited discovery in IPRs.  See *In re Protegrity Corp.*, No. 15-0482, 2015 WL 4734938, at *5 (N.D. Cal. Aug. 10, 2015); 37 C.F.R. § 42.51(b)(1).  Polygroup further asserts Willis Electric's late disclosure violates Fed. R. Civ. P. 26(a)(3)(ii).  In response, Willis Electric notes Polygroup's extensive prior knowledge of the transcripts and participation in the IPR depositions.  However, Polygroup shows its ability to prepare for Luk's testimony at trial was impacted by the delayed disclosure.  Under Fed. R. Evid. 802 and assessment of the four Rule 37(c) factors, see *Watkins Inc. v. McCormick & Co.*, No. 15-cv-2688, 2023 WL 1777474, at *2 (D. Minn. Feb. 6, 2023), Luk's IPR deposition transcript is excluded.

Willis Electric properly disclosed Rodgers as a potential witness regarding secondary considerations.  Therefore, her testimony will not be excluded.

In addition, Polygroup moves to exclude live testimony from Ada Luk as Luk was never disclosed by Willis Electric as a trial witness under Fed. R. Civ. P. 26(a)(1)(A)(i). Willis Electric failed to show its non-disclosure was substantially justified or harmless, resulting in prejudice to Polygroup's ability to depose or conduct discovery on this witness. Fed. R. Civ. P. 37(c)(1) warrants excluding Luk's testimony.

Finally, Polygroup moves to exclude a license agreement produced by Willis Electric months after its execution between Willis Electric and Botanex ("Luk Agreement"). Willis Electric failed to substantiate any reasonable justification for the delayed disclosure under Fed. R. Civ. P. 26(e). Allowing late production of the agreement would impose further delays and expenses. Therefore, the Luk Agreement is excluded pursuant to Fed. R. Civ. P. 37(c).

In light of the foregoing analysis, Polygroup's motion is granted as to: (1) Luk's IPR deposition transcript; (2) live testimony from Luk; and (3) the Luk Agreement. The motion is otherwise denied.

**ORDER**

Based on the foregoing analysis and all the files, records and proceedings herein, **IT IS HEREBY ORDERED** that:

1.      Plaintiff's Motion in Limine No. 1 is **GRANTED IN PART** and **DENIED IN PART**.  Defendants may reference the existence and invalid status of the eight underlying independent claims, but should avoid details of the inter partes review proceedings themselves.  Discussion should focus on how the invalidity of the independent claims impacts the obviousness analysis for the still-asserted dependent claims.

2.      Plaintiff's Motion in Limine No. 2 is **DENIED**.  Defendants may introduce evidence and testimony regarding its subjective beliefs and independent investigation into infringement and validity issues.

3.      Plaintiff's Motion in Limine No. 3 is **DENIED**.  The sales data for unaccused products was properly produced as rebuttal evidence and its admission is justified.

4.      Plaintiff's Motion in Limine No. 4 is **GRANTED IN PART** and **DENIED IN PART**.  Defendants may not introduce evidence solely aimed at establishing inequitable conduct but may reference undisclosed prior art for invalidity defenses.

5.      Plaintiff's Motion in Limine No. 5 is **GRANTED**.  Defendants are precluded from presenting evidence or arguments regarding the prior lawsuits.

6.      Defendants' Motion in Limine No. 1 is **DENIED**.  Plaintiff may introduce evidence related to the PTAB's analysis of secondary considerations.

7.    Defendants' Motion in Limine No. 2 regarding evidence of the IPR proceedings themselves is **DENIED**.   The Court will provide an appropriate limiting instruction to the jury.

8.    Defendants' Motion in Limine No. 3 regarding legal testimony by Fonder is **DENIED** as premature without identification of particular objectionable testimony.

9.    Defendants' Motion in Limine No. 4 regarding online comments is **DENIED**.   The online comments may be admissible depending on context.   Ruling is deferred until trial.

10.    Defendants' Motion in Limine No. 5 is **GRANTED** as to the Luk's IPR deposition transcript, live testimony from Luk, and the Luk Agreement.   The motion is otherwise **DENIED**.[1]


Dated:  January 9, 2024                                    s/Joan N. Ericksen
                                                          Joan N. Ericksen
                                                          United States District Judge

---

[1] This Amended Order has been modified only to remove Rodgers from the list of IPR deposition transcripts that are excluded.