UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

Willis Electric Co., Ltd.,                                            Case No. 15-cv-3443 (JNE/DTS)

Plaintiff,

v.                                                                        **ORDER**

Polygroup Limited et al,

Defendants.

---

This matter comes before the Court on Defendants Polygroup Limited (Macao Commercial Offshore), Polygroup Macau Limited (BVI), Polytree (H.K.) Co. Ltd., Polygroup Trading Limited's (collectively, "Defendants" or "Polygroup") motion for judgment as a matter of law, a new trial, or remittitur, (Dkt. 1011), and Plaintiff Willis Electric Co., Ltd.'s ("Willis Electric") motion for attorneys' fees, (Dkt. 1002.)  For the reasons addressed below, the Court denies the motions.

## BACKGROUND

The full factual background of this litigation is set forth in previous orders and will not be repeated here.  Briefly, Willis Electric filed this patent infringement action in 2015 alleging that Polygroup infringed various claims of several patents, including U.S. Patent No. 8,454,186 ("'186 Patent"), which relates to an artificial holiday tree with multiple trunk segments that include internal trunk wiring to provide electrical power to light strings attached to the branches, utilizing a "coaxial coupling" design.  Polygroup asserted defenses of non-infringement and invalidity of these patents.  After motion practice and

inter partes review proceedings challenging the validity of the asserted patents, *see*, *e.g.*, *Polygroup Ltd. MCO v. Willis Elec. Co., Ltd.*, 2021-1401, 2021-1402, 2022 WL 1183332 (Fed. Cir. Apr. 20, 2022), the sole claim tried to the jury was claim 15 of the '186 Patent.

The jury trial commenced on January 8, 2024, and on January 17, 2024, the jury returned a unanimous verdict finding that Polygroup willfully infringed claim 15 of the '186 Patent and awarded $42,494,772 in damages. On March 11, 2024, the Court entered judgment against Polygroup for over $71.4 million, including pre-judgment interest. Post-trial, Willis Electric moved for attorneys' fees on March 22, 2024, and Polygroup moved for judgment as a matter of law, new trial or remittitur on April 8, 2024.

## ANALYSIS

## I.     Motion for Judgment as a Matter of Law, New Trial or Remittitur

Judgment as a matter of law ("JMOL") is appropriate when "a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue." Fed. R. Civ. P. 50(a). The Court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 150-51 (2000). The Federal Circuit has held that JMOL may be granted by the trial court only if "the facts and inferences point so strongly and overwhelmingly in favor of one party that the Court believes that [a] reasonable [person] could not arrive at a contrary verdict . . . ." *Kinetic Concepts, Inc. v. Smith & Nephew, Inc.*, 688 F.3d 1342, 1356 (Fed. Cir. 2012) (quotation omitted). On the other hand, "if there is substantial evidence opposed to the [grant of JMOL] . . . [it] should be denied." *Id.*

Under Rule 59, the Court may grant a new trial "for any reason for which a new trial has heretofore been granted in an action at law in federal court."  Fed. R. Civ. P. 59(a)(1)(A).  Grounds for a new trial include a verdict that is against the weight of the evidence, legal errors at trial, or when the proceeding was influenced by prejudice or bias.  *See 01 Communique Lab., Inc. v. Citrix Sys.*, 889 F.3d 735, 740 (Fed. Cir. 2018).  A new trial should be granted only if the verdict is against the "great weight" of the evidence or to prevent a miscarriage of justice.  *Leader Techs., Inc. v. Facebook, Inc.*, 678 F.3d 1300, 1305 (Fed. Cir. 2012).

A court may remit a damages award only if it "is grossly excessive or monstrous, clearly not supported by the evidence, or based only on speculation or guesswork."  *Lucent Techs. Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1310 (Fed. Cir. 2009) (quoting *Brooktree Corp. v. Advanced Micro Devices, Inc.*, 977 F.2d 1555, 1580 (Fed. Cir. 1992)).  If there is sufficient evidence presented to support the jury's finding of patent infringement, the Court must defer to the jury's determination.  *See i4i Ltd. P'ship v. Microsoft Corp.*, 598 F.3d 831, 850 (Fed. Cir. 2010).

## A.    Invalidity – Obviousness

A patent claim is invalid as obvious "if the differences between the claimed invention and the prior art are such that the claimed invention as a whole would have been obvious to a person having ordinary skill in the art . . . ."  35 U.S.C. § 103.  The obviousness inquiry entails consideration of the scope and content of the prior art, differences between the prior art and the claims at issue, the level of ordinary skill in the pertinent art, and any secondary considerations of non-obviousness.  *See Graham v. John Deere Co.*, 383 U.S.

1, 17-18 (1966).   Obviousness is a question of law based on underlying factual determinations.  *Kinetic Concepts*, 688 F.3d at 1356-57.  The movant bears the burden of proving obviousness by clear and convincing evidence.  *Id.* at 1360.

### 1.   Motivation to Combine Prior Art

The key issue is whether a person of ordinary skill in the art would have been motivated to modify the prior art GKI tree to use coaxial connectors as claimed in the '186 Patent.  Polygroup argues that the use of coaxial connectors to power LED lights was well-known in the art, and that adapting the GKI tree to use such connectors would have been an obvious solution to the problem of powering LEDs.  It contends that the mechanical and electrical modifications required would have been simple and straightforward to a skilled artisan.

Willis Electric disagrees, arguing that the evidence shows a skilled artisan would not have viewed coaxial connectors as an obvious replacement for the GKI tree's two-prong connector design.   Its expert, Dr. James Dickens, testified that the two-prong connectors were integral to the GKI tree's alignment feature, which ensured proper mechanical and electrical connection between the tree sections.  Dr. Dickens opined that replacing the two-prong connectors with coaxial connectors would have required eliminating this alignment feature and extensively redesigning the connector housings, a process that would not have been apparent or obvious.

The Court finds Dr. Dickens' testimony more persuasive on this factual issue. While Polygroup's argument has some surface appeal given the known use of coaxial connectors with LED lights, it fails to grapple with the specific design challenges posed by

the GKI tree.  The jury could reasonably have credited Dr. Dickens' explanation of why adapting that particular tree to use coaxial connectors would not have been as simple or obvious as Polygroup suggests.

Polygroup argues that any necessary design changes would have been within the skill of an ordinary artisan, but it offers little concrete evidence to support that assertion. Its own expert, Dr. John Martens, did not directly address the impact of removing the GKI tree's alignment feature or provide any detailed explanation of how the connector housings could have been modified.  The jury was not required to accept Polygroup's conclusory argument that the changes would have been easy or obvious, particularly in light of Dr. Dickens' more specific testimony to the contrary.

Viewing the record in the light most favorable to Willis Electric, the Court finds that substantial evidence supports the jury's presumed factual finding that a skilled artisan would not have been motivated to combine the prior art in the manner claimed.  While a factfinder could perhaps have reached the opposite conclusion, it is not the Court's role to reweigh the evidence or second-guess the jury's determination.  The motivation to combine is a factual issue best left to the jury where, as here, it is supported by substantial evidence. *See id.* at 1357.

### 2.      Secondary Considerations

Secondary considerations of non-obviousness must be considered as part of the overall obviousness analysis, not merely as rebuttal evidence.  *See In re Cyclobenzaprine Hydrochloride Extended-Release Capsule Patent Litig.*, 676 F.3d 1063, 1076-77 (Fed. Cir. 2012) (rejecting a formal burden-shifting framework that would consider objective

evidence only after a prima facie obviousness showing).  Courts should exercise care in assessing such evidence, considering whether the objective indicia are attributable to the inventive characteristics of the claimed invention.  *See id.* at 1079 n.6 (noting that courts must give such evidence weight when attributable to the inventive characteristics).  The patentee bears the burden of producing evidence sufficient to establish the requisite nexus.  *GrafTech Int'l Holdings, Inc. v. Laird Techs. Inc.*, 652 F. App'x 973, 979 (Fed. Cir. 2016).

The Court finds that Willis Electric's secondary considerations evidence is entitled to little weight because it fails to establish a nexus to the novel features of claim 15.  Willis Electric relies primarily on the commercial success of its One Plug trees, contending that they garnered higher profits and replaced sales of non-One Plug trees.  But not all One Plug trees practiced claim 15—some used non-coaxial connectors.  The commercial success of One Plug trees in general says little about the non-obviousness of claim 15's specific coaxial connector limitations.

The same flaw undermines Willis Electric's evidence of industry praise and copying.  The Lowe's representative praised the One Plug design in general terms, not the coaxial connectors in particular.  And while Willis Electric argues that Polygroup and others copied its patented design after seeing the One Plug tree's success, it offers no evidence tying that alleged copying to claim 15's novel features.  At most, the evidence suggests that others sought to emulate the unpatented concept of an internally-powered tree, which cannot support non-obviousness.

Willis Electric also cites no evidence that the use of coaxial connectors in artificial trees produced any unexpected results. The purported benefits of such connectors were already known in the art.

In sum, Willis Electric's secondary considerations evidence is largely disconnected from the features that differentiate claim 15 from the prior art. Without a clear nexus to the merits of the claimed invention—as opposed to other, unrecited features—this evidence cannot support a finding of non-obviousness. *See MeadWestVaco Corp. v. Rexam Beauty & Closures, Inc.*, 731 F.3d 1258, 1264-65 (Fed. Cir. 2013).

### 3.   Conclusion on Obviousness

This is a close case, as evidenced by the parties' competing arguments and expert testimony. Ultimately, however, the Court cannot conclude that Polygroup has met its high burden of establishing obviousness as a matter of law.

The key issue is whether modifying the GKI tree to use coaxial connectors would have been obvious to a skilled artisan. While there are reasons to think it might have been—given the known use of such connectors with LED lights—there is also substantial evidence cutting the other way. Dr. Dickens' cogently explained why adapting the GKI tree's specific design to use coaxial connectors would not have been as straightforward as Polygroup suggests, due to the need to eliminate the existing alignment feature and extensively redesign the connector housings. The jury was entitled to credit this testimony and find it more persuasive than Polygroup's less detailed assertions to the contrary.

The Court is mindful that it must view the evidence in the light most favorable to Willis Electric and resist the temptation to substitute its own judgment for that of the jury.

Where, as here, there is substantial evidence to support the jury's implied findings on the factual aspects of obviousness, the Court may not overturn its ultimate legal conclusion lightly. *See Kinetic Concepts*, 688 F.3d at 1356-57.

The secondary considerations do not alter this conclusion. As discussed above, Willis Electric's evidence lacks a clear nexus to the novel features of claim 15 and is therefore entitled to little weight. This weak, tangentially relevant evidence cannot overcome the jury's presumed finding that Polygroup failed to make a sufficient prima facie obviousness case.

In sum, the Court finds that Polygroup has not met its burden of demonstrating obviousness as a matter of law. Substantial evidence supports the jury's verdict when the record is viewed in the light most favorable to Willis Electric. The Court therefore denies Polygroup's renewed motion for judgment as a matter of law on obviousness.

## B. Invalidity – New Trial

Under Rule 59, the Court may grant a new trial "for any reason for which a new trial has heretofore been granted in an action at law in federal court." Fed. R. Civ. P. 59(a)(1)(A). Grounds for a new trial include when the verdict is against the weight of the evidence, damages are excessive, the trial was unfair, or prejudicial error was committed. *EcoFactor, Inc. v. Google LLC*, 2023-1101, 2024 WL 2807318, at *4 (Fed. Cir. June 3, 2024). A new trial should be granted "only if the error prejudices the substantial rights of a party and would result in a miscarriage of justice if left uncorrected." *Rush v. Smith*, 56 F.3d 918, 922 (8th Cir. 1995) (citing *Fleming v. Harris*, 39 F.3d 905, 908 (8th Cir. 1994)).

### 1. Imbalanced Presentation of Prosecution History

Polygroup argues that a new trial is warranted because Willis Electric presented evidence and argument about the '186 Patent's prosecution history that was prejudicially imbalanced.  It contends that Willis Electric was permitted to argue that the asserted prior art was merely cumulative of what the United States Patent and Trademark Office ("Patent Office") had already considered, while Polygroup was improperly restricted in its efforts to rebut those arguments by delving into the details of the prosecution history.  Polygroup claims this unfairly suggested to the jury that the Patent Office's conclusions deserved deference and that a higher burden of proof applied.

Willis Electric responds that the Court properly allowed it to present evidence of the prior art's purported cumulativeness, including through cross-examination of Polygroup's expert, Dr. Martens.  It argues that Polygroup had ample opportunity to explore the prosecution history and explain any differences between the prior art and the references before the Patent Office.  Willis Electric contends that the Court did not abuse its discretion by excluding minute details about the prosecution of unasserted claims, which could have confused the jury.

Upon review of the arguments presented, the Court finds no basis for a new trial on this ground.  Polygroup opened the door to evidence about the prosecution history by relying on prior art references that were similar to those the Patent Office had already considered.  This made the question of cumulativeness relevant to the weight and credibility of Polygroup's invalidity case. *See Microsoft Corp. v. i4i Ltd. P'ship*, 564 U.S. 91, 111 (2011) (jury may consider whether evidence of invalidity is materially new and give it more weight if so).  While the Court limited the depth of this inquiry to avoid

confusion and waste of time, it did not preclude Polygroup from presenting its side of the story.  The record shows that Polygroup's counsel cross-examined Willis Electric's expert and sought to elicit testimony supporting its position that the GKI tree was materially different from anything before the Patent Office.  That the jury ultimately found Willis Electric's evidence more persuasive does not mean the trial was unfairly imbalanced.

Nor did the Court's evidentiary rulings prejudicially suggest that a higher burden of proof applied or that the jury should defer to the Patent Office's conclusions.  The jury was properly instructed on the presumption of validity and the clear and convincing evidence standard.  *See* 35 U.S.C. § 282(a); *Microsoft*, 564 U.S. at 95.  It was also instructed that it must decide the question of obviousness for itself, based on the evidence presented at trial.  Polygroup cites no legal authority suggesting that a patentee is barred from arguing that the prior art mirrors the prosecution history, so long as the jury is properly instructed on the burden of proof.

In sum, the Court finds no abuse of discretion or legal error in its evidentiary rulings that would warrant a new trial on obviousness.  *See Highmark Inc. v. Allcare Health Mgmt. Sys., Inc.*, 572 U.S. 559, 563 n.2 (2014) (evidentiary rulings reviewed for abuse of discretion).  Polygroup had a fair opportunity to present its invalidity case and rebut Willis Electric's evidence within the proper scope of the issues for trial.  The jury was correctly instructed on the law and was not misled about the burden of proof or the weight to give the Patent Office's conclusions.

### 2.    Prejudicial Arguments by Willis Electric

Polygroup next contends that Willis Electric's obviousness arguments at trial were improper and prejudicial. It points to statements in Willis Electric's opening and closing arguments suggesting that the Patent Office had "gold plated" the '186 Patent and that Polygroup would need to prove invalidity to a virtual certainty.

Willis Electric responds that its arguments were not improper when viewed in context. It notes that the "gold plated" comment was isolated and that it never argued for a "beyond a reasonable doubt" standard. Willis Electric contends that the Court properly instructed the jury on the law and that Polygroup waived any objection to counsel's arguments by failing to raise them at trial.

Upon review of the arguments and evidence presented, the Court finds that Polygroup has not shown grounds for a new trial. The passing "gold plated" reference was not literally true but was unlikely to have misled the jury in light of the correct legal instructions it received. Similarly, while Willis Electric's burden of proof analogy was inapt, its actual argument was that Polygroup's burden was "just short of" the reasonable doubt standard, which is not a material misstatement of the law. Viewed in context, these isolated comments did not so permeate the proceedings with prejudice as to deprive Polygroup of a fair trial. *See Selective Ins. Co. of Am. v. Heritage Constr. Co., LLC*, No. 19-3174, 2024 WL 2728073, at *5 (D. Minn. May 28, 2024) (finding that the Heritage Parties' problematic statements were insufficient to warrant a new trial) (citing *Celltrust Corp. v. Ionlake, LLC*, No. 19-2855, 2023 WL 8448792, at *6-7 (D. Minn. Dec. 6, 2023) (holding that isolated statements, even if uncured, would not have changed the outcome or resulted in a miscarriage of justice).

Moreover, Polygroup did not object to these arguments at trial, which indicates that the error was not so prejudicial as to require a new trial. *See Billingsley v. City of Omaha*, 277 F.3d 990, 997 (8th Cir. 2002). The lack of any contemporaneous objection limited the Court's ability to evaluate the potential prejudice and intervene if necessary. While the Court has discretion to grant a new trial even for unpreserved errors in extreme cases, this is not such a case. Polygroup's post-hoc complaints are insufficient to show that the fairness of the trial was undermined or that a new trial is required to prevent a miscarriage of justice.

### 3.   Objections and Preservation of Error

Finally, Willis Electric argues that Polygroup failed to preserve any objection to the Court's evidentiary rulings or the scope of evidence presented on obviousness. It contends that Polygroup was required to object to the Court's pretrial orders and jury instructions to preserve these issues for a new trial motion.

The Court finds it unnecessary to resolve this preservation issue because, as explained above, Polygroup's new trial arguments fail on the merits. Polygroup has not shown that the Court's evidentiary rulings were an abuse of discretion or that any legal error in the presentation of obviousness evidence prejudiced its substantial rights. The complained-of errors, to the extent they occurred at all, were not so severe as to warrant a new trial even under a plain error standard. *See Selective Ins.*, 2024 WL 2728073, at *5.

### 4.   Conclusion on New Trial for Invalidity

Polygroup has not established that the Court's evidentiary rulings on obviousness resulted in an unfairly imbalanced or prejudicial presentation of the issues to the jury. The

Court did not improperly restrict Polygroup's ability to present its invalidity case or rebut Willis Electric's evidence on the prior art and prosecution history.  Nor did Willis Electric's arguments at trial so infect the proceedings with unfairness as to require a new trial.  The jury was correctly instructed on the law and was not misled about the burden of proof or the deference owed to the Patent Office.

At its core, Polygroup received a fair trial on obviousness in which the jury simply found Willis Electric's evidence and arguments more persuasive.  That is not grounds for a do-over.  The Court therefore denies Polygroup's alternative motion for a new trial on invalidity.

### C.    Infringement

To prove infringement, the patentee must show that the accused device meets each claim limitation, either literally or under the doctrine of equivalents.  *See Seal-Flex, Inc. v. Athletic Track & Court Const.*, 172 F.3d 836, 842 (Fed. Cir. 1999).  Claim construction is a question of law for the Court, while infringement is a question of fact for the jury.  *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 976 (Fed. Cir. 1995) (en banc), *aff'd*, 517 U.S. 370 (1996).  On a post-trial motion for judgment as a matter of law, the Court must view the evidence in the light most favorable to the non-moving party and may grant the motion only if there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue.  *See* Fed. R. Civ. P. 50; *Reeves*, 530 U.S. at 150-51.

### 1.    Claim Construction Disputes

The parties dispute the proper construction of two claim limitations relevant to infringement: the "independent of" limitation and the "coupling" limitation.

### a.   "Independent of" Limitation

The asserted claim requires "the electrical connection being made independent of the rotational orientation of the first trunk portion relative the second trunk portion."  The Court construed this term to mean "an electrical connection that can be made at any available arrangement of the first tree/trunk portion relative to the second tree/trunk portion about a common vertical axis between the tree-trunk portions."

Polygroup argues that the Court should reconsider its construction and adopt Polygroup's original proposal that the term requires maintaining an electrical connection while the trunk portions are rotated.  It contends that this is required by the plain claim language and that Willis Electric's expert applied the Court's construction incorrectly.

Willis Electric responds that the Court properly rejected Polygroup's construction because it improperly imports limitations from the specification into the claims.  It argues that Polygroup waived any objection to the Court's construction by not objecting to the jury instructions.

Upon review, the Court finds no basis to alter its claim construction ruling.  The Court carefully considered the parties' competing constructions and found that Polygroup's proposal departed from the plain and ordinary meaning of the claim language by adding a requirement of maintaining the electrical connection during rotation.  The Court's construction properly focused on the ability to make an electrical connection at multiple rotational positions, without requiring the connection to be maintained while rotating between those positions.  Polygroup identifies no new evidence or arguments warranting reconsideration of this ruling.

Polygroup's objection to Willis Electric's application of the Court's construction also lacks merit. Contrary to Polygroup's assertion, Dr. Dickens did not treat the claim language as a meaningless tautology but explained how it describes a specific type of connector allowing for rotationally independent electrical connection. The jury was entitled to credit this testimony as consistent with the Court's construction.

Finally, Polygroup was required to raise any objection to the Court's claim construction and its application in the jury instructions before the jury retired. By failing to do so, Polygroup waived these arguments for purposes of JMOL and a new trial. *See* Fed. R. Civ. P. 51(c); *Minn. Mining & Mfg. Co. v. Chemque, Inc.*, 303 F.3d 1294, 1308 (Fed. Cir. 2002).

### b.      "Coupling" Limitation

The asserted claim also requires "coupling a lower end of the second trunk body to an upper end of the first trunk body along a common vertical axis." The Court found that this term should be given its plain and ordinary meaning and that no further construction was required.

Polygroup argues that the Court should adopt its originally proposed construction that coupling requires securely attaching the ends such that they are in physical contact with each other. It contends that Willis Electric's expert and fact witnesses admitted that such direct physical contact does not occur in the accused products.

Willis Electric responds that the Court properly rejected Polygroup's narrow construction because "coupling" does not require direct contact between the trunk ends themselves but may be accomplished through intermediate components that connect them.

15

It argues that Polygroup identifies no authority requiring reconsideration of the Court's ruling.

Upon further review, the Court finds no reason to depart from its previous claim construction.  As the Court previously explained, the claim language does not limit coupling to direct physical contact between the trunk ends but allows for the possibility that other components such as a connector assembly could be involved.  *See Deere & Co. v. Bush Hog, LLC*, 703 F.3d 1349, 1354 (Fed. Cir. 2012) (courts should not limit claims to preferred embodiment absent clear disclaimer).  The specification discloses embodiments using connectors between trunk portions and does not clearly disclaim or limit the ordinary meaning of coupling.  Polygroup's arguments for a narrower construction are no more persuasive now than they were at the Markman stage.  *See Shire Dev., LLC v. Watson Pharms., Inc.*, 787 F.3d 1359, 1364-65 (Fed. Cir. 2015).

The fact that some of Willis Electric's witnesses may have described the trunk ends as not directly contacting each other is immaterial, as the Court's construction does not require direct contact.  Under the plain and ordinary meaning, a reasonable jury could find that the trunk ends are "coupled" with the assistance of intervening connector assemblies, even if not directly touching each other.  *See ActiveVideo Networks, Inc. v. Verizon Commc'ns, Inc.*, 694 F.3d 1312, 1326 (Fed. Cir. 2012) (affirming that it is up to the jury to determine infringement based on the plain and ordinary meaning of claim terms, without importing additional limitations into the claims).

### 2.    Application of Constructions to Accused Products

Applying the Court's claim constructions, the Court finds that substantial evidence supports the jury's infringement verdict. Willis Electric's expert, Dr. Dickens, provided a detailed, limitation-by-limitation analysis of how the accused products meet each element of the asserted claim, including the "independent of" and "coupling" limitations as the Court construed them.

On the "independent of" limitation, Dr. Dickens explained that the accused products have coaxial connectors allowing the trunk portions to be electrically connected at multiple rotational positions. Additionally, Mr. Alan Leung, Polygroup's engineer, testified that the "clutch" or "fin" features of the connectors were irrelevant to infringement of the patent. This testimony further supports a finding that the accused products meet the "independent of" limitation under the Court's construction.

On the "coupling" limitation, Dr. Dickens testified that the accused products couple the trunk end bodies together as required by the claim, even if the trunk ends do not directly contact each other. He explained that the coupling is accomplished by connector assemblies residing partially inside the trunk ends. This fits within the plain meaning of coupling the trunk ends.

In response, Polygroup largely relies on attorney argument and a few snippets of cross-examination testimony that are taken out of context or fail to grapple with the Court's construction. For example, Polygroup cites testimony by its expert witness, Dr. Martens, that the trunk ends are separated by an intentional gap in the accused products. But as explained above, direct contact is not required under the plain meaning of "coupling," so the existence of a gap is not dispositive.

Polygroup's reliance on Dr. Martens' expert testimony carries little weight in view of Dr. Dickens' detailed infringement analysis.  The jury was entitled to credit Dr. Dickens' testimony over that of Dr. Martens, who simply assumed that coupling required direct contact without analyzing the Court's construction.  It is not the Court's role on JMOL to re-weigh the competing expert testimony or make credibility determinations.  *Reeves*, 530 U.S. at 150-51.

In sum, when the evidence is viewed in the light most favorable to Willis Electric, the Court finds that substantial evidence supports the jury's verdict that the accused products literally infringe the asserted claim as the Court construed it.  Polygroup's contrary arguments are based on an unduly narrow view of the Court's construction and impermissible credibility judgments that the Court may not make.  The Court therefore rejects Polygroup's arguments for JMOL of non-infringement.

### 3.    Direct and Indirect Infringement by Polygroup Macau

Polygroup briefly argues that Polygroup Macau cannot be liable for infringement because it is a mere holding company that does not make, sell, or import the accused products.  However, Willis Electric presented substantial evidence from which a reasonable jury could conclude that Polygroup Macau was involved in the infringing activities, either directly or indirectly.

Polygroup's Chairman, Mr. Lewis Cheng, testified that "Polygroup is a group of companies that designs, manufactures and sells seasonal Christmas products," suggesting that all defendants are involved in the production and sale of the accused trees.  Similarly, the CEO, Mr. Elmer Cheng, testified that "[t]he defendants' trees are sold" by retailers in

the U.S.  Viewed in the light most favorable to Willis Electric, these statements support a finding that Polygroup Macau was engaged in selling the accused products as part of the unified Polygroup enterprise.

Moreover, even if Polygroup Macau did not directly sell the accused products, a jury could reasonably find it liable for indirect infringement.  The evidence showed that Polygroup is a web of closely related companies all owned and controlled by the same small group of family members.  The management of all defendants overlapped, and executives were well aware of the operational activities and importation of accused products for sale in the U.S.—the source of Polygroup's revenue.

Importantly, the jury also heard that the Polygroup executive leadership was aware of the '186 Patent and Willis Electric's infringement allegations, yet continued to sell the accused products.  From this evidence, a reasonable jury could infer that even if Polygroup Macau did not directly sell the accused products, it induced other Polygroup entities and customers to engage in infringing sales that it knew were infringing.  *See Lifetime Indus., Inc. v. Trim-Lok, Inc.*, 869 F.3d 1372, 1379-80 (Fed. Cir. 2017) (defendant's knowledge of the patent and assistance in installing infringing product was sufficient to plausibly support liability for induced infringement).

Polygroup cites no contrary evidence that compels a different conclusion as a matter of law.  Instead, it argues only that one Polygroup employee gave contradictory testimony about Polygroup Macau's status as a holding company.  But assessing witness credibility and resolving conflicts in testimony are quintessential jury functions that the Court may not usurp on JMOL.  *Reeves*, 530 U.S. at 151.  The jury was not required to credit the

description of Polygroup Macau as a mere holding company, particularly given the evidence of its involvement in the larger Polygroup enterprise.  Drawing all reasonable inferences in favor of Willis Electric, the Court cannot say that a reasonable jury would have lacked a legally sufficient basis to find Polygroup Macau liable for at least indirect infringement.

### 4.      Conclusion on Non-Infringement

Viewing the trial evidence in the light most favorable to Willis Electric, the Court finds that substantial evidence supports the jury's verdict that all of the accused Polygroup products and entities infringe the '186 Patent.  Willis Electric's expert provided a detailed infringement analysis applying the Court's claim constructions to the accused products. The jury was entitled to credit this testimony over Polygroup's contrary evidence and attorney arguments.  Polygroup's motion for JMOL of non-infringement is denied.

### D.    Damages

A patentee is entitled to "damages adequate to compensate for the infringement, but in no event less than a reasonable royalty . . . ." 35 U.S.C. § 284.  A reasonable royalty is defined as the amount that the patentee and the infringer would have agreed upon at a hypothetical negotiation just before infringement began.  *See Lucent, Inc.*, 580 F.3d at 1324.  The patentee bears the burden of proving damages by a preponderance of the evidence.  *Id.*

When a patentee seeks damages based on an infringer's sales of multi-component products, it must apportion damages to reflect only the value attributable to the patented feature.  *VirnetX, Inc. v. Cisco Sys., Inc.*, 767 F.3d 1308, 1326 (Fed. Cir. 2014).

Apportionment can be addressed through proper claim construction, the royalty base, the royalty rate, or a combination thereof.  *Exmark Mfg. Co. v. Briggs & Stratton Power Prods. Grp., LLC*, 879 F.3d 1332, 1348 (Fed. Cir. 2018).

### 1. Apportionment

Polygroup argues that Willis Electric's damages expert, Ms. Michele Riley, failed to properly apportion damages to the value of the patented feature—the coaxial connectors—as opposed to unpatented features of the accused artificial trees.  It contends that Ms. Riley improperly used the entire value of the accused trees as her royalty base without accounting for the trees' many unpatented features.  Polygroup also argues that Ms. Riley erred by comparing profits on trees with and without the One Plug feature because not all One Plug trees are covered by the asserted claim.

Willis Electric responds that Ms. Riley performed a proper apportionment analysis under the governing principles.  It argues that she apportioned the value of the patented feature through both an "income approach" comparing profitability of patented and unpatented trees, and a "market approach" analyzing comparable license agreements. Willis Electric contends that Ms. Riley did not use the entire market value of the accused trees but properly isolated the incremental profit premium attributable to the patented feature.

### a. Willis Electric's Expert's Approach

Ms. Riley performed an income-based apportionment comparing the profits of Willis Electric's patented One Plug trees to unpatented trees without the One Plug feature. She also compared the profit premium of Polygroup's allegedly infringing Quick Connect

trees to its non-Quick Connect trees.  Mr. Riley further accounted for apportionment in her "market approach" by considering the royalty rates in what she deemed comparable license agreements.

Polygroup argues that Ms. Riley's analysis is flawed because she assumed all One Plug trees were covered by the asserted claim, when in fact many were not.  But Ms. Riley was not required to dissect profits on a claim-by-claim basis.  She properly focused on the profits attributable to the One Plug feature that embodies the patented coaxial connector technology.  *See id.* at 1348 (apportionment may consider value added by the patented invention as a whole, not just the inventive features, in comparison to the conventional features recited in the patent claim).

Ms. Riley's market-based approach also accounts for apportionment by considering the royalty rates in purportedly comparable licenses, which necessarily reflect the market value of the licensed technology.  While the Court has some doubts about the comparability of the licenses that Ms. Riley considered (as discussed below), her general approach of using comparable licenses to frame a reasonable royalty is widely accepted and presumed to incorporate apportionment.  *See Commonwealth Sci. & Indus. Research Org. v. Cisco Sys., Inc.*, 809 F.3d 1295, 1303-04 (Fed. Cir. 2015).

Importantly, Ms. Riley did not simply apply an unapportioned royalty rate to the entire value of the accused trees.  *Cf. Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1318-20 (Fed. Cir. 2011) (rejecting patentee's use of 25% "rule of thumb" without tying royalty to incremental value of patented feature).  Instead, she used the comparable licenses

to inform her analysis of the profits attributable to the patented technology—a form of indirect or "built-in" apportionment.  *See Commonwealth*, 809 F.3d at 1303-04.

### b.  Conclusion on Apportionment

In sum, while not perfect, Ms. Riley's income- and market-based approaches reflect a serious effort to apportion the value of the patented technology and thus satisfy the basic requirements for reliability.  The factual disputes and methodological critiques raised by Polygroup go to the weight of her testimony, not its admissibility or legal sufficiency.  *See Summit 6, LLC v. Samsung Elecs. Co.*, 802 F.3d 1283, 1296 (Fed. Cir. 2015) (noting defendants' quarrels with expert's damages analysis go to the weight of her testimony, not its admissibility).  The Court cannot conclude that Ms. Riley's analysis is so fundamentally flawed as to provide no reasonable basis for the jury's award.

### 2.  Comparable Licenses

### a.  Accounting for Differences

Polygroup next argues that Ms. Riley's damages analysis improperly relied on non-comparable license agreements without accounting for key economic and technological differences between those agreements and the hypothetical negotiation in this case.  It contends that the H.S. Craft license covered six different patents beyond the one at issue here, yet Ms. Riley failed to explain how this affected her analysis.  Polygroup also argues that Ms. Riley made no serious effort to account for differences between the various lump-sum and running-royalty licenses she considered.

Willis Electric responds that the degree of comparability between license agreements is a factual issue properly resolved by the jury.  It contends that Ms. Riley's

testimony and other record evidence sufficiently explained the similarities and differences between the licenses she considered and the hypothetical negotiation. Willis Electric argues that Polygroup had a full opportunity to cross-examine Ms. Riley and present contrary evidence on the comparability of the licenses.

### b.    Specific Licenses Relied Upon

The most significant license Ms. Riley relied on was Willis Electric's agreement with H.S. Craft, which granted rights to the '186 Patent along with several others. Ms. Riley acknowledged that this broad license was "a little bit different" from a hypothetical license to only the '186 Patent.

Polygroup is correct that Ms. Riley did little to address how the inclusion of additional patents in the H.S. Craft license affected its comparability to the hypothetical negotiation. An expert must generally account for "distinguishing facts" between actual licenses and the hypothetical negotiation. *Wordtech Sys., Inc v. Integrated Networks Sols., Inc.*, 609 F.3d 1308, 1320-22 (Fed. Cir. 2010). Here, however, the H.S. Craft license was not the sole basis for Ms. Riley's opinion and would not have resulted in a materially different royalty even if she had assigned the '186 Patent only a fraction of the $2 rate.

Ms. Riley also considered several other licenses and business agreements, including Willis Electric's licenses of related technology with GKI and Boston Warehouse, and Polygroup's own agreements with Loominocity and others. While these agreements dealt with artificial tree technology generally, they did not specifically cover the '186 Patent. Ms. Riley thus had to draw inferences about how similar the licensed technology was to the hypothetical negotiation. Her testimony could have provided a more fulsome

explanation of why she viewed these licenses as comparable, but the failure to do so in this case was not so egregious as to invalidate her analysis entirely. *See ActiveVideo*, 694 F.3d at 1333 (holding that courts may allow expert damages testimony even if there are disagreements regarding the degree of comparability of license agreements relied upon or the expert's methodology, as such issues go to the weight of the testimony rather than admissibility).

Importantly, Polygroup had a full and fair opportunity to cross-examine Ms. Riley about the differences between the licenses she considered and the technology at issue. The jury also heard testimony from Polygroup's own expert, Ms. Julie Davis, critiquing Ms. Riley's choice of licenses and her failure to make certain adjustments. The proper vehicle to challenge the comparability of licenses relied on by a damages expert is through cross-examination and the presentation of contrary evidence, not exclusion. *Id.* Polygroup availed itself of that opportunity here.

### c.    Conclusion on Comparable Licenses

The degree of comparability between license agreements and the hypothetical negotiation is a factual issue best resolved by the jury. *See Ericsson, Inc. v. D-Link Sys.*, 773 F.3d 1201, 1227 (Fed. Cir. 2014). Where, as here, the patentee's expert provides some explanation of why she viewed certain licenses as comparable, and the accused infringer has an opportunity to challenge that testimony through cross-examination and contrary evidence, the jury's damages award should not be disturbed simply because it rests in part on licenses that are not perfectly analogous. *See id.*; *ActiveVideo*, 694 F.3d at 1333. The Court cannot say that Ms. Riley's consideration of the H.S. Craft license and other

agreements as guideposts for the hypothetical negotiation was so unreliable or prejudicial as to render the damages verdict improper.

### 3. Other Damages Issues

#### a. Disgorgement of Profits

Polygroup briefly argues that the jury's award of $4 per unit amounts to an impermissible disgorgement of profits rather than a reasonable royalty. It contends this rate would have left Polygroup with no profit on the accused products.

The Court disagrees. Ms. Riley expressly testified that she was offering an opinion on a reasonable royalty, not lost profits or disgorgement. She properly focused on the anticipated profitability and value of the patented technology that the parties would have considered at the hypothetical negotiation. *See Interactive Pictures Corp. v. Infinite Pictures, Inc.*, 274 F.3d 1371, 1385 (Fed. Cir. 2001). While she noted Polygroup's purported profits as one data point, her opinion was not tied to or limited by those profits.

Moreover, the Federal Circuit has repeatedly held that the law does not require that an infringer be permitted to make a profit. *See, e.g.*, *Golight, Inc. v. Wal-Mart Stores, Inc.*, 355 F.3d 1327, 1338 (Fed. Cir. 2004); *State Indus., Inc. v. Mor-Flo Indus., Inc.*, 883 F.2d 1573, 1580 (Fed. Cir. 1989). A reasonable royalty may exceed the infringer's actual profits without being improper, as it is based on the parties' expectations at the time of the hypothetical negotiation, not an after-the-fact accounting. *See Interactive Pictures*, 274 F.3d at 1385. The Court cannot conclude that the jury's choice of a $4 per unit royalty improperly equates to a disgorgement of profits rather than a reasonable royalty.

#### b. Marking and Date of First Infringement

Polygroup next argues that Willis Electric failed to comply with the marking statute, 35 U.S.C. § 287, and thus cannot recover damages before the date it provided actual notice of infringement on July 25, 2014. It contends that Willis Electric presented insufficient evidence of consistently and continuously marking its products with the '186 Patent number.

The Court again disagrees. Willis Electric presented undisputed testimony from its CEO, Mr. Johnny Chen, that it began marking its patented products with the '186 Patent number as soon as the patent issued in June 2013. Mr. Chen explained that Willis Electric marked both the product packaging and the trunk components themselves with the patent number. Willis Electric also presented several physical exhibits corroborating Mr. Chen's testimony, including example product labels and a diagram showing where the company marked various components of its artificial trees. Even Polygroup's counsel conceded that "I don't think there is contrary evidence."

Given this largely unrebutted evidence of substantial compliance with the marking statute, the Court finds no clear error in allowing the jury to award damages beginning on the date of the '186 Patent's issuance in June 2013. While Polygroup argues that Willis Electric's evidence was insufficiently detailed, it points to no contrary evidence that Willis Electric actually failed to mark a significant number of products after June 2013. Polygroup also failed to raise any specific objection to Willis Electric's marking evidence at trial. Under these circumstances, the Court cannot say that the jury's implicit finding that Willis Electric complied with Section 287 is unsupported by substantial evidence. *See*

*Funai Elec. Co. v. Daewoo Elecs. Corp.*, 616 F.3d 1357, 1373-74 (Fed. Cir. 2010) (compliance with marking statute is a question of fact).

### c.   Prejudicial Statements by Willis Electric in Trial

Finally, Polygroup argues that Willis Electric's counsel made several prejudicial and inflammatory statements that incited the jury to award excessive damages based on improper considerations. It points to repeated references to Polygroup's status as a Chinese company and accusations that it was playing litigation "shell games."

While some of Willis Electric's counsel's comments, such as references to Polygroup's nationality and insinuations about its business practices, could be viewed as potentially problematic, the Court need not make a definitive ruling on their propriety. Importantly, Polygroup did not raise any contemporaneous objections to these statements at trial, and the comments do not ultimately affect the validity of the verdict. "A failure to object to statements made during closing argument waives such an objection." *Billingsley*, 277 F.3d at 997. The lack of any objections suggests that Polygroup did not view the comments as sufficiently prejudicial in context to warrant a new trial. *See Innovation Scis., LLC v. Amazon.com, Inc.*, 2021-2111, 2022 WL 2824675, at *3 (Fed. Cir. July 20, 2022) (citing *Novo Nordisk A/S v. Becton Dickinson & Co.*, 304 F.3d 1216, 1220 (Fed. Cir. 2002) ("[C]ounsel . . . cannot as a rule remain silent, interpose no objections, and after a verdict has been returned seize for the first time on the point that the comments to the jury were prejudicial." (citation omitted))), *cert. denied*, 143 S. Ct. 779 (2023).

Moreover, the Court instructed the jury at the outset of trial that counsel's statements were not evidence and again in the final instructions that the jury must not be influenced

by any improper considerations or biases.  "Jurors are presumed to follow the court's instructions."  *Farrington v. Smith*, 707 F.3d 963, 972 (8th Cir. 2013) (quoting *United States v. Patterson*, 684 F.3d 794, 799 (8th Cir. 2012).  Polygroup offers no concrete evidence that the jury disregarded these instructions or that its damages verdict was actually influenced by Willis Electric's improper comments.  The size of the award alone does not demonstrate that the jury acted out of passion or prejudice rather than based on the evidence presented.  *See Taken Alive v. Litzau*, 551 F.2d 196, 198 (8th Cir. 1977).

While some of Willis Electric's counsel's comments could be viewed as potentially problematic, Polygroup points to only a handful of such instances in the context of a two-week trial.  These isolated statements, while improper, were not so egregious or pervasive as to infect the entire trial with unfairness or mislead the jury into basing its damages award on inappropriate factors.  *See I-Sys., Inc. v. Softwares, Inc.*, No. 02-1951 (JRT/FLN), 2005 WL 1430323, at *8 (D. Minn. Mar. 7, 2005) (*cf. Morrissey v. Welsh Co.*, 821 F.2d 1294, 1304 (8th Cir.1987) (holding that a new trial was necessary where counsel's improper statements, viewed collectively, were sufficiently inflammatory and prejudicial to undermine the fairness of the trial and the reliability of the verdict)).  Viewing the record as a whole, the Court cannot say that these comments alone warrant overturning the jury's damages verdict.

### d.    Conclusion on Damages

Ultimately, while Polygroup has identified various potential flaws and weaknesses in Willis Electric's damages case, the Court cannot conclude that these defects are so severe as to render the jury's award unsupported by substantial evidence or infected by prejudicial

error.  Ms. Riley's damages opinion, while not bulletproof, incorporated reliable apportionment methodologies and was grounded in sufficiently comparable licenses and financial data to provide a reasonable basis for the jury's award.  The jury's decision to credit her testimony over Polygroup's expert and other contrary evidence was within its proper fact-finding role and does not warrant overturning the verdict.

Polygroup's arguments about non-compliance with the marking statute and prejudicial statements by Willis Electric's counsel are also unavailing.  The Court finds no clear error in the jury's presumed finding that Willis Electric complied with the marking statute as of June 2013, given the largely unrebutted evidence on that issue.  And while some of Willis Electric's counsel's comments were improper, they were not so pervasive or prejudicial in context as to warrant a new trial, particularly given Polygroup's failure to raise any objections at the time.

In sum, the Court cannot say that the damages verdict is clearly not supported by the evidence or that it shocks the conscience.  *See Taken Alive*, 551 F.2d at 198 (stating the court will overturn a damages verdict "only in those rare situations where [the Court is] pressed to conclude that there is 'plain injustice' or a 'monstrous' or 'shocking' result" (citation omitted)).  Nor has Polygroup shown that any evidentiary errors or misconduct at trial had "substantially influence[d] the jury's verdict."  *See Thapa v. St. Cloud Orthopedic Associates, Ltd.*, No. 19-2568 (TNL), 2023 WL 7039651, at *5 (D. Minn. Oct. 26, 2023).  Accordingly, the Court denies Polygroup's motion for a new trial or remittitur on damages.  The jury's damages award is supported by substantial evidence and will not be disturbed.

### F.    Conclusion

Polygroup has moved for judgment as a matter of law, a new trial, or remittitur on issues of patent invalidity, infringement, willfulness, and damages following a jury trial. The Court must view the evidence in the light most favorable to Willis Electric and may only grant judgment as a matter of law if no reasonable jury could have reached the verdicts on these issues. *See Reeves*, 530 U.S. at 150-51. A new trial is only warranted if the verdict is against the great weight of the evidence or to prevent a miscarriage of justice. *Leader Techs.*, 678 F.3d at 1305. And remittitur is only appropriate if the damages award is clearly not supported by the evidence or shocks the conscience. *See Triton Corp. v. Hardrives, Inc.*, 85 F.3d 343, 347 (8th Cir. 1996).

### 1.    JMOL

On invalidity, the Court concludes that substantial evidence supports the jury's verdict that Polygroup failed to prove obviousness by clear and convincing evidence. While there are certainly similarities and overlapping elements between the asserted claim and the prior art, the jury reasonably credited Willis Electric's expert testimony on the differences between the prior art and the claimed invention, as well as the existence of secondary considerations supporting non-obviousness. The Court cannot say that the evidence points so overwhelmingly in Polygroup's favor that no reasonable jury could have reached the verdict here.

On infringement, the Court again finds that substantial evidence supports the jury's verdict that Polygroup's accused products meet all elements of the asserted claim, as properly construed. Willis Electric's expert provided a detailed, limitation-by-limitation analysis applying the Court's constructions. Polygroup's contrary arguments rest on an

31

overly narrow view of those constructions that the Court has already rejected. Viewed in the light most favorable to Willis Electric, the evidence is not so one-sided as to require overturning the infringement verdict.

On willfulness, the Court concludes that substantial evidence supports the jury's finding that Polygroup's infringement was willful. The record contains evidence that Polygroup knew about the '186 Patent, had concerns about infringement, but continued to sell the accused products anyway without developing or memorializing any good-faith non-infringement positions. While Polygroup presented some evidence of its engineers' beliefs about non-infringement, the jury was entitled to disbelieve or discount that testimony in light of the other evidence of Polygroup's conduct. The willfulness verdict is not unreasonable on this record.

On damages, the Court finds that the $4 per unit royalty awarded by the jury is supported by substantial evidence in the form of Willis Electric's expert testimony and the comparable licenses she analyzed. While Polygroup has identified arguably valid critiques of that testimony and evidence, the proper recourse for such weaknesses was through cross-examination and contrary evidence, not JMOL. Viewed in the light most favorable to Willis Electric, the damages evidence is not so sparse or speculative as to render the jury's award improper as a matter of law.

For these reasons, the Court denies Polygroup's renewed motion for judgment as a matter of law on invalidity, infringement, willfulness, and damages.

### 2.   New Trial

As for Polygroup's alternative request for a new trial, the Court again finds no grounds to disturb the jury's verdicts.

On invalidity, Polygroup has not shown that the Court's evidentiary rulings restricting the depth of the parties' presentations on the '186 Patent's prosecution history resulted in any unfair prejudice or miscarriage of justice. Both sides had an adequate opportunity to present their key evidence and arguments on obviousness within the proper scope of the issues for trial. Nor did the Court's rulings or Willis Electric's arguments improperly suggest that a higher burden of proof applied.

On infringement, Polygroup largely relies on an incorrect claim construction position that the Court has already considered and rejected, both at the Markman stage and in the jury instructions. No new trial is warranted based on these arguments.

On damages, while Polygroup has raised valid questions about the degree of apportionment and comparability of licenses in Willis Electric's expert's analysis, these are factual matters that were properly left to the jury. The arguments raised by Polygroup go to the weight and credibility of the expert testimony, not its fundamental admissibility or legal sufficiency. The Court cannot say that the jury's damages award is so excessive or shocking as to require a new trial.

The Court also finds that Polygroup has not shown sufficient prejudice from any of Willis Electric's counsel's challenged comments to justify a new trial. The comments were isolated rather than pervasive, and the jury was properly instructed not to base its decision on improper factors. Polygroup's failure to raise contemporaneous objections to most of the comments further undercuts its claims of incurable prejudice.

Ultimately, this was a hard-fought case with competing evidence on both sides of the key factual issues.  The jurors' unanimous verdicts suggest they carefully considered that evidence and found Willis Electric's proofs more persuasive in the end.  The Court cannot say that those verdicts are against the clear weight of the evidence, based on erroneous legal principles, or a miscarriage of justice.  Accordingly, the Court denies Polygroup's motion for a new trial on invalidity, infringement, willfulness, and damages.

### 3.    Remittitur

Finally, the Court finds no basis to remit the jury's damages award.  As discussed above, the $4 per unit royalty is supported by substantial evidence in the record, even if that evidence had arguable flaws and was not uncontroverted.  The Court cannot say that this award is "clearly not supported by the evidence", exceeds the maximum limit of a reasonable range, or "shocks the conscience."  *See Lucent Techs.*, 580 F.3d at 1310; *Hudson v. United Sys. of Ark., Inc.*, 709 F.3d 700, 705 (8th Cir. 2013).  The fact that the award is higher than what Polygroup believes is appropriate does not justify substituting the Court's judgment for that of the jury.  Accordingly, the Court denies Polygroup's motion for remittitur.

## II.    Motion for Attorneys' Fees

Under 35 U.S.C. § 285, "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party."  The Supreme Court has explained that an "'exceptional' case is simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated."  *Octane Fitness,*

*LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 554 (2014). "District courts may determine whether a case is 'exceptional' in the case-by-case exercise of their discretion, considering the totality of the circumstances." *Id.*

Relevant factors for consideration include "frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence." *Id.* at 554 n.6 (quoting *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534 n.19 (1994)). However, no single factor is determinative, and "a case presenting either subjective bad faith or exceptionally meritless claims may sufficiently set itself apart from mine-run cases to warrant a fee award." *Id.* at 555.

A party need only establish its entitlement to fees under Section 285 by a preponderance of the evidence. *Id.* at 557. And even if a court finds a case to be exceptional, it must still determine whether an award of attorneys' fees is justified under the circumstances. *See Icon Health & Fitness, Inc. v. Octane Fitness, LLC*, 576 F. App'x 1002, 1005 (Fed. Cir. 2014) ("The Supreme Court's decision in *Octane* did not, however, revoke the discretion of a district court to deny fee awards even in exceptional cases.").

While a finding of willful infringement may support a determination that a case is exceptional, it does not require one. *Sionyx LLC v. Hamamatsu Photonics K.K.*, 981 F.3d 1339, 1355 (Fed. Cir. 2020). Rather, the willfulness determination is just one factor in the totality-of-the-circumstances analysis. *See Eko Brands, LLC v. Adrian Rivera Maynez Enters., Inc.*, 946 F.3d 1367, 1375 (Fed. Cir. 2020) ("[T]here is 'no precise rule or formula' for deciding whether a case is 'exceptional.'" (quoting *Octane Fitness*, 572 U.S. at 554)).

## A.     "Exceptional Case"

The Court must determine whether this case is "exceptional" under 35 U.S.C. § 285, which would allow for an award of attorneys' fees to Willis Electric as the prevailing party. The Supreme Court has explained that an exceptional case "stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." *Octane Fitness*, 572 U.S. at 554. This is a holistic inquiry that requires considering the totality of the circumstances. *Id.*

Willis Electric argues that three factors make this case exceptional: (1) the jury's finding of willful infringement; (2) the purported weakness of Polygroup's litigation positions on infringement, invalidity, and damages; and (3) Polygroup's alleged litigation misconduct. Polygroup responds that the willfulness verdict alone does not make the case exceptional, that its positions were reasonable and non-frivolous, and that it did not engage in any litigation misconduct.

The Court recognizes that the willfulness finding, standing alone, does not require a finding of exceptionality. The Federal Circuit has repeatedly held that "[w]hile willfulness is 'among the reasons that a court may find a case to be exceptional, an attorney fee award is not mandatory when willful infringement has been found.'" *Sionyx*, 981 F.3d at 1355 (citation omitted). Instead, willfulness is just one factor in the totality-of-the-circumstances analysis. *Id.* Here, while the Court upholds the willfulness verdict, other factors weigh against a finding that this case "stands out" from others.

In particular, the Court is not persuaded that Polygroup's litigation positions were so unreasonable or frivolous as to make this case exceptional. Polygroup succeeded in invalidating many of the asserted claims before trial and in obtaining summary judgment of non-infringement on several others. These successes suggest that Polygroup's defenses were not objectively baseless. *See Checkpoint Sys. v. All-Tag Sec. S.A.*, 858 F.3d 1371, 1376 (Fed. Cir. 2017). And while Willis Electric criticizes Polygroup for re-raising certain invalidity arguments rejected in IPR proceedings, Polygroup also relied on prior art, such as the GKI Tree product, that was not before the PTAB. The Court cannot say that Polygroup's invalidity defense, as a whole, was exceptionally meritless.

As for litigation misconduct, the Court concurs with its prior finding, in the context of enhanced damages, that Willis Electric's allegations "do not clearly show extraordinary malfeasance." This case lacks the sort of egregious behavior or "gross injustice" that has supported exceptionality findings based on litigation conduct. *See Kilopass Tech., Inc. v. Sidense Corp.*, 738 F.3d 1302, 1313 (Fed. Cir. 2013).

Finally, the Court's denial of enhanced damages further counsels against an exceptional case finding here. The standard for enhanced damages under Section 284 significantly overlaps with the Section 285 inquiry, as both look to the strength of the parties' litigating positions and the reasonableness of the accused infringer's conduct. *See Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 769 F.3d 1371, 1384 (Fed. Cir. 2014). And courts routinely decline to award attorneys' fees where, as here, they have denied enhanced damages. *See, e.g., Juicy Whip, Inc. v. Orange Bang, Inc*., 382 F.3d 1367, 1373 (Fed. Cir. 2004); *Modine Mfg. Co. v. Allen Grp., Inc., 917 F.2d 538, 543 (Fed. Cir. 1990).* The

Court's determination that this case did not involve "egregious infringement behavior" or "misconduct beyond typical infringement" strongly suggests that it is not "exceptional" under Section 285 either.

In sum, considering the totality of the circumstances, the Court concludes that this case does not "stand out" from other patent infringement disputes in terms of either the strength of Polygroup's litigating position or the manner in which it litigated the case. *See Octane Fitness*, 572 U.S. at 554. Willis Electric's motion for attorneys' fees and costs is therefore denied.

### B.    Limits on Any Potential Fee Award

Even if the Court were to find this case exceptional under Section 285, any award of attorneys' fees would be subject to several important limitations. Polygroup argues that (1) fees must be causally related to the misconduct that renders the case exceptional; (2) fees should be limited to those incurred in connection with the sole claim on which Willis Electric prevailed; (3) expert fees cannot be recovered under Section 285; and (4) a detailed accounting would be necessary to properly apportion fees. Willis Electric does not directly address these limitations in its opening brief, instead stating that it will submit itemized support for its fee request if the Court finds the case exceptional.

The Court notes that any hypothetical fee award would need to be limited in several respects. First, Federal Circuit precedent is clear that Section 285 only allows a prevailing party to recover fees that are causally related to the misconduct that renders the case exceptional. In cases that have been deemed exceptional only in part, the fee award must bear some relation to the extent of the misconduct. *Beckman Instruments, Inc. v. LKB*

*Produkter AB*, 892 F.2d 1547, 1553-54 (Fed. Cir. 1989).  "A fee award under § 285 may only 'compensate a party for the extra legal effort to counteract the [] misconduct.'" *Carter v. Alamo Grp., Inc.*, 561 F. App'x 958, 963 (Fed. Cir. 2014) (emphasis omitted) (quoting *Highmark, Inc. v. Allcare Health Mgmt. Sys., Inc.*, 687 F.3d 1300, 1316 (Fed. Cir. 2012)). Thus, even if the Court found some portion of Polygroup's conduct to be exceptional, Willis Electric could only recover fees specifically traceable to that conduct.

Second, any fee award would need to be apportioned to account for Willis Electric's limited success in this litigation.  "The amount of fees awarded to the 'prevailing party' should bear some relation to the extent to which that party actually prevailed." *Beckman Instruments*, 892 F.2d at 1554.  Here, Willis Electric's initially asserted over 100 patent claims but ultimately prevailed on only one—claim 15 of the '186 Patent.  Under these circumstances, it would be inappropriate to award Willis Electric fees for time spent on claims and issues on which it did not prevail.  *See id.* at 1553-54 (stating that fee awards should relate to the extent of actual success); *Machinery Corp. of Am. v. Gullfiber AB*, 774 F.2d 467, 475 (Fed. Cir. 1985) (emphasizing that fee awards in patent cases should be limited to exceptional circumstances and require careful consideration of all relevant factors).  Willis Electric's fee request would need to be limited accordingly.

Third, expert fees cannot be recovered under Section 285.  *See Amsted Indus. v. Buckeye Steel Castings Co.*, 23 F.3d 374, 377 (Fed. Cir. 1994).  The Federal Circuit has held that Section 285 does not override the American Rule for expert fees.  *Id.*  Expert fees exceeding statutory limits are potentially recoverable only under the court's inherent power to sanction in cases involving "fraud or abuse of the judicial process."  *Id.* at 378.  No such

fraud or abuse findings have been made here.  Thus, even if attorneys' fees were awarded under Section 285, expert fees would not be recoverable under that provision, and could only be awarded up to the limits set by 28 U.S.C. § 1821(b) or potentially in full under the court's inherent sanctioning power if fraud or abuse were found.

Finally, the Court concurs that a detailed accounting would be necessary to properly apportion any fee award consistent with the above limitations.  Willis Electric's opening brief did not provide the requisite "itemized accounting of the attorneys' fees requested," instead proposing to submit that information only after an exceptional case finding.  But without that itemized accounting, the Court would be unable to determine which fees, if any, were incurred in connection with the misconduct that rendered the case exceptional, or to apportion fees based on Willis Electric's degree of success.  *See, e.g., OSSO-OVCH AXP v. Maxwell*, No. 21-2212, 2022 WL 2291691, at \*9 (N.D. Ohio June 24, 2022) (denying without prejudice plaintiff's request for attorney fees where plaintiff failed to provide sufficient documentation).  Any renewed request for fees following an exceptional case finding would need to be supported by detailed records and be limited as set forth above.

In sum, while the Court ultimately concludes that this case is not "exceptional" under Section 285, any potential fee award would be subject to significant limitations even if that threshold finding were made.  Recoverable fees would be limited to those caused by the adjudged misconduct, apportioned to account for Willis Electric's success on only one of more than 100 asserted claims, and would not include expert fees absent a finding of fraud or abuse of judicial process.  A detailed, itemized accounting would be necessary to

permit the required apportionment and ensure that only permissible fees were awarded. Willis Electric's opening brief did not provide the information needed to conduct this inquiry, instead improperly deferring it until after an exceptional case finding. For this additional reason, Willis Electric's fee motion is denied.

## C.    Conclusion

In light of the foregoing analysis, the Court concludes that this case is not "exceptional" within the meaning of 35 U.S.C. § 285 and that Willis Electric's motion for attorneys' fees and costs must therefore be denied.

The Court has carefully considered the totality of the circumstances, including the specific factors identified by the parties. On balance, those factors do not support a finding that this case "stands out from others with respect to the substantive strength of [Polygroup's] litigating position . . . or the unreasonable manner in which the case was litigated." *Octane Fitness*, 572 U.S. at 554.

The jury's finding of willful infringement, while certainly relevant, is not dispositive on the issue of exceptionality. *See Sionyx*, 981 F.3d at 1355. And the other factors discussed above—including Polygroup's successes in invalidating and defeating infringement of many of the originally asserted claims, the absence of egregious litigation misconduct, and the Court's prior denial of enhanced damages—all weigh against an exceptional case determination. Ultimately, the Court cannot say that Polygroup's defense of this action was so unreasonable that it would be grossly unjust for the prevailing party to bear its own attorney fees. *See J.P. Stevens Co. v. Lex Tex Ltd.*, 822 F.2d 1047, 1050

(Fed. Cir. 1987) (discussing the framework for awarding attorney fees under 35 U.S.C. § 285 in patent cases, including the court's discretion and factors considered).

The Court is not persuaded otherwise by Willis Electric's arguments in favor of an exceptional case finding. While Willis Electric puts substantial emphasis on the jury's willfulness verdict, the Court has explained why that factor alone is not enough to render a case exceptional under the governing totality-of-the-circumstances standard. And while Willis Electric criticizes various aspects of Polygroup's litigation conduct, it has not shown the sort of objective unreasonableness or "gross injustice" required to support an exceptional case finding and justify overriding the American Rule. *See id.* at 1050-52.

This was undoubtedly a hard-fought case. But it was not an "exceptional" one. Many patent cases involve hard-fought and even bitterly fought disputes where, at the end of the day, one side turns out to be correct and prevails. But that alone does not usually make a case "exceptional" for fee award purposes under Section 285. *See Octane Fitness*, 572 U.S. at 555 (explaining that an exceptional case is one that "sufficiently set itself apart from mine-run cases" due to "subjective bad faith or exceptionally meritless claims"). So too here.

For all of these reasons, the Court concludes, in its discretion, that the circumstances of this case do not warrant a deviation from the baseline "American Rule" that each party bears its own attorneys' fees. Willis Electric's motion for attorneys' fees and non-taxable costs is denied.

This conclusion renders it unnecessary for the Court to reach the various arguments raised by Polygroup about the appropriate amount of any fee award. Because no fees will

be awarded, the Court need not consider whether Willis Electric's request was adequately supported or appropriately limited.  Those issues are moot in light of the Court's threshold determination that this case is not "exceptional."

ORDER

Based on the foregoing analysis and all the files, records and proceedings herein, **IT IS HEREBY ORDERED** that:

1.     Defendants Polygroup Limited (Macao Commercial Offshore), Polygroup Macau Limited (BVI), Polytree (H.K.) Co. Ltd., and Polygroup Trading Limited's motion for judgment as a matter of law, new trial, or remittitur, (Dkt. 1011), is **DENIED**.

2.     Plaintiff Willis Electric Co., Ltd.'s motion for attorneys' fees, (Dkt. 1002), is **DENIED**.

Dated:  June 24, 2024                                        s/Joan N. Ericksen
                                                            Joan N. Ericksen
                                                            United States District Judge